THOMAS D. WILLIAMS

*vs.*

FRANK McGRADE.

The exemption from service of process conferred by *Chapter* 71, *Laws* 1865, is a personal privilege, which should be taken advantage of by a motion to set aside the service, and is waived by a general appearance, and the putting in of an answer.

When the property of a third person is levied upon by a deputy sheriff, the affidavit provided for in *Sec.* 1, *Ch.* 24, *Laws* 1865, may be served upon such deputy. If the affidavit discloses the legal effect of a contract under which the affiant claims the property seized, so far as is necessary to distinctly inform the officer that the execution debtor has no rights in the property levied upon, and that whatever rights he may at any time have possessed have been transferred to the affiant for a valuable consideration, and what is the general nature of the rights of the affiant, such affidavit is a sufficient compliance with the statute.

The agreement recited in *hæc verba* in the opinion in this case, whereby B. lent to W. certain sheep for the period of three years, upon the special terms and conditions therein expressed, the said W., at the expiration of the three years, to return and deliver to said B. as many sheep as were lent him, and of as good quality, weight and age as those received by him, is a contract of bailment, not of sale. The general property in the sheep lent remaining in the bailor, and the bailment being to the bailee *personally*, such bailee has no property in the same upon which an execution against him can be levied.

The plaintiff in this action, which was brought in the District Court for Carver county, alleged the wrongful taking and detention by defendant, of 290 sheep, and 118 lambs, the property of the plaintiff, and demanded their return with

damages. The defendant after pleading exemption from service of process under statute, in relation to which the case is fully stated in the opinion of the Court, justified the taking, alleging that he took the same as sheriff of said county, by his deputy, Wm. Cressey, under certain executions duly issued out of said court against one Henry H. Williams, and that at the time of said taking the said sheep and lambs were the property of said Henry H. Williams. The cause was tried by the Court without a jury. The Court found, among other things, as a conclusion of law, that the plaintiff was entitled to judgment for the recovery of the 290 sheep, with damages for the detention, and in case a return could not· be had, for the value of the sheep, and judgment was entered pursuant to such finding. The defendant appeals to this Court. The facts, as found by the Court below are sufficiently stated in the opinion of the Court.

L. M. Brown, John H. Brown, and F. R. E. Cornell for Appellant.

Van Etten & Officer for Respondent.

*By the Court*—Berry, J.—In this case the defendant sets up as an *answer* to the complaint that " at and long prior to the accruing of the plaintiff's supposed cause of action, he was and still is  *  *  *  *  *  *  engaged in the military service of the United States " as a 1st lieutenant of cavalry, and he insists that the plaintiff's remedy against him is " suspended by the act of March 2, 1865." *Section* 1 of this act provides that officers of the defendant's alleged rank shall be " exempt from service of all civil process " during their military service. The Legislature have not declared the service of process *void*, but they have attempted to confer a personal privilege upon those who fall within the class designated.

And this is a privilege which parties in whose favor it is allowed can waive if they see fit. If the defendant wished to avail himself of the exemption in this case he should have moved to set aside the service; but instead of taking this course he has appeared generally by answering, thereby submitting himself to the jurisdiction of the Court, and waiving his privilege. See *Reynolds vs. LaCrosse & Minn. Packet Co.*, 10 *Minn.*, 185.

The Court before which this action was tried below, without a jury, found that on the 7th day of September, 1863, one R. H. Bennett was the owner of 259 ewe sheep, and that on that day Bennett delivered them to one H. H. Williams under a written contract, in which Williams bound himself " to keep said sheep three years for the increase therefrom," and to deliver 950 pounds of wool annually immediately after shearing, with a stipulation that " at the expiration of the three years said Williams shall return and deliver to said Bennett as many sheep as were lent to him, and of as good quality, weight and age as those received by him," &c. The Court further found that on the " 23d day of November, 1863, the said R. H. Bennett demanded and threatened to take the said sheep which he had let to the said H. H. Williams out of his possession, on account of the danger of their being seized by the creditors of the said H. H. Williams, and the same were then and there counted out and separated from the balance of the flock upon the premises of said H. H. Williams; but at the request of the said H. H. Williams, (who was unwilling to give them up), that they might be left and turned over to this plaintiff, the said R. H. Bennett consented to such arrangement, and the said original contract was therefore assigned to said plaintiff * * * * by the said H. H. Williams; and said plaintiff verbally consented then and there to take said sheep under the terms of said contract, and there-

Williams v. McGrade.

upon took a formal and verbal delivery from said Bennett of said sheep, but the same continued thereafter in the care of the said H. H. Williams upon his premises in said Scott Co., mingled with a large flock in his charge and keeping, down to the time of the alleged seizure thereof complained of in this action." The Court further finds that the "sheep and lambs mentioned in the complaint were the said sheep obtained from the said R. H. Bennett, and the increase of the same, except thirty-one sheep owned by the said Thomas D. Williams in his own right." It appears also that the defendant was sheriff of the county of Scott, and that the sheep and lambs were levied upon by Cressey, the defendant's deputy, as the property of H. H. Williams, upon sundry executions. Before the sale upon execution the plaintiff caused to be served upon Cressey an affidavit of his claim to the property seized, as provided by *Sec.* 1, *Ch.* 24, *Laws* 1865. *Section* 1 reads as follows: "If property levied upon or taken by a sheriff by virtue of a writ of execution, warrant of attachment or other process, be claimed by any other person than the defendant, or his agent, and such person make affidavit of his title thereto, or right to the possession thereof, stating the value thereof and the ground of such title or right, the sheriff may release such levy or taking, unless the plaintiff on demand of him or his agent indemnify the sheriff against such claim by an undertaking executed by two sufficient sureties, accompanied by their affidavits, that they are each worth double the value of the property as specified in the affidavit of the claimant of such property, and are freeholders and householders of the county; and no claim to such property by any other person than the defendant or his agent shall be valid against the sheriff, unless so made; and notwithstanding such claim, when so made, he may retain such property under levy a reasonable time to demand such indemnity."

Williams v. McGrade.

The appellant objects, first, that the affidavit should have been served upon the sheriff, not upon his deputy. It is to be observed that the law does not expressly provide for *any* service, but as it is to be inferred that service is to be made on some person, so it is to be inferred that it is to be made upon the person upon whom it is reasonable to make it under the circumstances. We think it reasonable to permit the service to be made upon the deputy when he makes the levy, and has the property in his possession. He acts in the place and stead of, and as the sheriff. The sheriff himself may be out of the country, as he was in this case. If the levy has been made upon property belonging to a third person, not the judgment debtor by a deputy, it is the deputy who has personally committed the wrong, and it is in his power to repair it. It is further objected that the affidavit did not sufficiently state the grounds of the plaintiff's title or right to the sheep and lambs. The plaintiff's affidavit states, " that the ground of his right of possession is a certain contract or agreement made between R. H. Bennett and H. H. Williams, on the 7th day of September, 1863, by which the said Bennett lent to the said H. H. Williams the said 259 sheep, to keep for the term of three years for the increase, and upon the terms mentioned in the said contract or agreement; that the said contract on the part of the said H. H. Williams has been by him duly assigned to the deponent for a valuable consideration, with the consent of said Bennett; that this deponent owns all the right, title, interest or estate, in said sheep created by the contract in favor of the said Henry H. Williams, and by him assigned to this deponent aforesaid, which includes the right of possession, until the 7th day of September, 1866, at which time this deponent is responsible for the said sheep to the said Bennett. It is not necessary to quote that part of the affidavit relating to the lambs, and the thirty-one sheep,

other than the 259 above spoken of, as no error in regard to them is complained of here.   It is objected to the affidavit that "it only informs the officer of the plaintiff's *opinion* of the legal construction of the contract of Sept. 7, 1863, to which contract the officer has no means of access."

We do not think it was necessary for the plaintiff to furnish the contract, or a copy of it, to the officer, nor to set out all its details.   If the affidavit disclosed the legal effect of the contract, so far as was necessary to distinctly inform the officer that the execution debtor had no rights in the property levied upon, and that whatever rights he may at any time have possessed, had been transferred to the affiant for a valuable consideration; and what the general nature of the affiant's rights was, we think the object of the statute was attained.   Nor do we discover any variance material in this case between the grounds of the plaintiff's right to the possession of the sheep, as stated in the affidavit, and as found by the Court.   It is said that the "verbal and formal delivery," found to have been made by Bennett to the plaintiff, should not have been considered, because it was not the ground of title or right set up in the affidavit.   But the assignment appears to have been made at Bennett's request; there is nothing to show that H. H. Williams had given up his right to the sheep before the execution of the assignment, and under all the circumstances, we are of opinion, that the delivery would amount to nothing more than evidence of *consent* on the part of Bennett to the new arrangement, and an acceptance of the plaintiff in the place and stead of his father. This is substantially what the affidavit shows.

As to the obligation of a party (upon whose property an execution against another is levied,) to make the affidavit provided for by the statute, as a pre-requisite to an action against the levying officer, we do not now determine.   The subject is certainly not free from difficulty.

We come now to inquire what was the nature of the original contract between Bennett and H. H. Williams. Was it a sale of the 259 sheep, by which an absolute title in the same passed to Williams, or was it a bailment?

We are clear that the agreement in this case, taken as a whole, and considered in all its parts, must be held to be an agreement of bailment, and not of sale. The intention of the parties as it appears upon the face of the contract, is to govern. The contract reads as follows:

"Article of agreement made this 7th day of September, 1863, between R. H. Bennett, of Cottage Grove, Minnesota, of the first part, and H. H. Williams, of Shakopee, Minnesota, of the second part, witnesseth; that the said Bennett has this day lent to said Williams two hundred and fifty-nine ewe sheep, of good weight, quality, and aged as per memorandum on back of this article. In consideration of which letting said Williams covenants and agrees with said Bennett to keep said sheep three years for the increase therefrom, and deliver annually, immediately after shearing thereof, to said Bennett or to his order, nine hundred and fifty pounds of wool cleanly washed, and at the expiration of the three years, said Williams shall return and deliver to said Bennett, as many sheep as were lent to him, and of as good quality, weight and age as those received by him; and said Williams shall during said three years annually pay all taxes levied or assessed upon said sheep, at the time when taxes shall be paid, as provided by law. It is further covenanted and agreed that if any of said sheep shall die, or become lost or sold, or if said Bennett shall believe said Williams is not taking due care of said sheep, or is unfaithfully performing his agreement in any manner, or is neglecting to shear said sheep, or is neglecting to pay said taxes thereon, in such case said Bennett may take immediate possession of the sheep remaining in the possession of said

Williams, who shall quietly and peaceably deliver them up, without working forfeiture of the right of said Bennett to recover from said Williams all the damages he may have sustained by reason of the death, loss, or sale of any of said sheep, or of the non-delivery to him of any wool to which he is hereby entitled. Said Bennett to be restored in all respects to the same position he would be in if this agreement had been fully performed by said Williams.

R. H. Bennett,

H. H. Williams."

It is to be observed, that in drawing this contract, the parties appear to have exercised some care to prevent its being construed as a contract of sale. The language is " the said Bennett has this day *lent*," not sold, the sheep. Williams is to return as many sheep as were *lent* to him. Williams agrees to *keep* said sheep three years. He is to deliver the specified amount of wool annually, " immediately after shearing *thereof*." He is to *keep* them " for the *increase therefrom*." He is to pay the taxes upon said sheep. Why stipulate to pay the taxes on his own sheep? If " any of *said* sheep shall die, or become lost or sold, or if said Bennett shall believe said Williams is not taking due care of *said* sheep, or is neglecting to shear *said* sheep, or is neglecting to pay said taxes thereon, \* \* \* Bennett may take immediate possession of the sheep remaining," &c. Such taking of possession is not to work a " forfeiture of the right of said Bennett to recover from said Williams all the damages he may have sustained by reason of the death, loss, or sale of any of said sheep." How could Bennett sustain *damage* by the death, loss, or sale of Williams' sheep?

We think these provisions are not fairly reconcilable with the idea that the transaction between these parties was a sale.

Under this construction of the contract, assuming that the plaintiff was a fraudulent assignee of H. H. Williams, and held the contract for his benefit only, as the Court below finds, had H. H. Williams any interest in the 259 sheep, which was the subject of levy? We think not. By the law in force when the levy in this instance was made, it was declared that "all property liable to an attachment is liable to execution." *Pub. Stat.*, *p.* 568, *Sec.* 88, and by *Sec.* 147, *p.* 551, *Ib.*, it is provided that "the rights or shares which the defendants may have in the stock of any corporation, together with the interests or profits thereon, and all other property in this territory of such defendants may be attached." The general property in the sheep was, as we have already determined, in Bennett. The bailment was to H. H. Williams *personally*. If the sale under the levy could pass anything, it could only pass the special property of Williams in the sheep under the contract, and by the very act by which he was divested of that special property, the special property was determined both as to Williams and as to the purchaser at the execution sale, and Bennett could maintain an action for a conversion. The statute must be held to refer to property of some value for the purposes of sale. It is not to be presumed that it was the intention of the law makers to put it in the power of the creditor to harass the debtor with no real benefit to himself. Upon this point it is only necessary to add that as the plaintiff under the assignment holds all the rights of H. H. Williams in the 259 sheep, what has been said in reference to the latter applies *mutatis mutandis* to him, and establishes his right to maintain this action as against the judgment creditors of his father.

We believe that we have considered the principal matters relied upon by the appellant in this case. There were several minor points made which it is not necessary to answer at length.

Ford v. Brownell.

One was that there was no sufficient designation of the 259 sheep, inasmuch as the levy was made upon 500, and the 259 were not pointed out to the officer. The defendant's answer seems to admit the taking of the sheep, and the affidavit of the plaintiff describes them as the sheep which were lent by Bennett to H. H. Williams, and Bennett's affidavit describes them as " Merino ewe sheep, all or nearly all of which are marked with a black spot on the hump, or near the tail." It does not appear that it was possible to give a more definite description. It does not appear that the officer placed his refusal to deliver up the sheep on the ground that they were not pointed out to him ; and it is fair to presume, that if he had made this objection, and asked to have them pointed out, his request would have been complied with, and the sheep pointed out by the hand, on the spot, and perhaps it was not practicable to designate them in any other way.

There are also several points made on both sides with regard to the pleadings and evidence, which we will not consider in detail. We think that none of them show error to the prejudice of the appellant.

The judgment is affirmed.