CHICAGO, BURLINGTON & NORTHERN RAILROAD COMPANY *vs.* L. C. PORTER, impleaded, etc.

June 23, 1890.

**Railway—Switch in Street—City Ordinance.**—An ordinance of the city of Winona, *held* to be sufficient consent on the part of the common council to the laying of a certain railroad switch track in that city.

**Same—Eminent Domain—"Public Use" Defined.**—Whether the use for which lands for the construction of a railroad track are to be taken is a public or private use does not depend on the number of persons who may have occasion to use it. If all people have a right to its use, it is a public use, though the number who require the use may be small.

**Same—Company must Prove Incorporation.**—Upon the hearing under Gen. St. 1878, *c.* 34, § 7, as amended by Laws 1879, *c.* 35, § 1, of a petition for the appointment of commissioners to determine the compensation for taking lands for railroad purposes, it is for the petitioner to prove its incorporation.

Appeal by defendant L. C. Porter from an order of the district court for Winona county, *Start,* J., presiding, granting a petition for the appointment of commissioners in a condemnation proceeding.

*Wilson & Bowers,* for appellant.

*Gale & Brown,* for respondent.

GILFILLAN, C. J.   This is an appeal from an order made on the application of the plaintiff, appointing commissioners to appraise the damages to be paid by it for taking private property for public use, for the purpose of constructing a switch track in the city of Winona, from its main track, along a line described in its petition, to the manufacturing establishments of the Laird-Norton Company.   The proposed switch line runs partly upon a public alley and partly upon private property, and crosses at least one public street.   The defendants, owners of land proposed to be taken, appeared before the district court to which the application was made, and opposed it, and, after a hearing, the court granted the application, and defendants appeal.   The assignments of error make three points, all of which we will consider, though not in the order in which they are stated in the assignments:   *First.* The city of Winona did not authorize the petitioner to construct, operate, or maintain such line.   *Second.* The proposed condemnation is not for a public use, but for a private use, and no public necessity is shown for it.   *Third.* The evidence does not show that the petitioner is a corporation, or that it is authorized by law to construct, maintain, or operate any railroad in this state.

The charter of the city of Winona (Sp. Laws 1867, c. 20) gives the common council (section 2, *subc.* 4) authority, by ordinances, resolutions, or by-laws, among other things, "to direct and control the location of railroad tracks."  Subdivision 24.   August 2, 1886, the common council passed an ordinance granting to the Chicago, Burlington & Northern Railroad Company authority to construct its main line through the city, and upon and across certain streets, describing the line, "and also, from time to time, to construct, operate, and maintain, from its main track to commercial and manufacturing establishments and yards northward from said main track, situate within seven hundred feet of its main line, such side tracks and switch tracks as such commercial and industrial interests may require."  Section 3 of the ordinance prescribes regulations as to width of tracks, and how to be laid with reference to the grade or surface, when laid in a street or alley, and as to the crossings at streets or

alleys. The switch track here in question comes within the limits of that part of the ordinance quoted, and, so far as the right to lay it on the line proposed depended upon the consent of the council, the plaintiff had the right. But the ordinance could not have the effect of giving authority to construct a railroad or any part of a railroad, and for that purpose to take private property. That authority must be derived from the legislature. The power conferred by the charter on the council, "to direct and control the location of railroad tracks," does not include the power to authorize the constructing of railroads, and the exercise of the right of eminent domain. It merely vests in the council as part of its police power, to be exercised in providing for the public safety and convenience in the use of streets and alleys, a supervision over the location of railroad tracks, where the authority to construct the railroad already exists, including the power to designate what streets and alleys may be laid upon. If the plaintiff had legislative authority to construct, maintain, and operate a railroad with side and switch tracks, and to take private property for the purpose, it need look to the council for nothing more than consent to its locating its tracks upon particular streets and alleys, which, as we have seen, was granted.

The assignment of error that the condemnation is sought for a private, and not a public, use, is based on the fact that the switch track is to terminate at the Laird-Norton manufacturing establishments, and on defendant's claim that it is intended for the sole accommodation of the business of those establishments. Though it seems from the evidence that, at present at least, those establishments may be benefited by the switch track more than any one else of the public, because they have more freights to ship upon it, the claim that it is intended for their sole accommodation is hardly sustained by the evidence. At any rate, so far as the question of public or private use depends on facts to be found from the evidence, the court below found them against the defendants, and that finding, as also the findings, included in the order made, that the public interests require the construction of the switch track, and that the lands proposed to be taken are required and necessary for the purpose, are conclusive, if fairly

v.43m—34

sustained by the evidence. The switch track, as the evidence shows, is to be part of a system of tracks, all belonging to the general enterprise of maintaining and operating a railroad for public use. The character of the use, in the case of a railroad or railroad track, does not depend on the amount of business, or the number of persons who may have occasion to use it, but on the right of the public to the benefit of it. If all the people have a right to the use of it, it is a public use or interest, though the number who require its use may be small. *Kettle River R. Co.* v. *Eastern Ry. Co.*, 41 Minn. 461, (43 N. W. Rep. 469.) There is nothing in the evidence to indicate that the Laird-Norton Company is to have any control over or management of the track in question, or to have any right in it other than that of any person or corporation having business establishments along or near it, to wit, the right to ship and receive freight upon it carried or to be carried over plaintiff's lines. It does not appear that there is to be anything exclusive in its contemplated use. The assignment of error is not well founded.

As to the third assignment of error, as herein numbered. It is elementary that no one but the state can exercise the right of eminent domain, without showing a grant from the state of authority to exercise it. The statute has not granted authority to exercise it for railroad purposes, except to corporations created or organized for the purpose of constructing and operating railroads. Where an attempt is made to take private property for a railroad, due incorporation as a railroad company of the party seeking to take it must appear, either by proof or by presumption. The mode of taking is prescribed by Gen. St. 1878, c. 34, commencing with section 13. The hearing upon the application is regulated by section 17, as finally amended by Laws 1879, c. 35, § 1. No pleading, unless the petition may be regarded as one, is required. The rule in Gen. St. 1878, c. 66, § 112, prescribing how a defendant shall put in issue the fact of plaintiff's incorporation, relates only to civil actions, and has no application to proceedings under section 17, c. 34. Undoubtedly, any one opposing the proceeding may state his objections in writing, and, should he do so, would probably be limited to the objections thus stated, and

be held to concede anything not embraced in the objections. In this case the written objections seem to cover everything necessary to appear in order to justify the taking.

The question is, upon whom was the *onus* of proof upon the fact of incorporation? Was it for the petitioner to prove that it was incorporated, or for those opposing the application to prove the contrary? We see nothing in the terms of the section to indicate an intention that the petitioner shall come before the court with any presumption in favor of its right to the relief it seeks, either in respect to the fact of its incorporation, or as to the existence of any other condition necessary to appear before the relief can be granted. Nor is there anything showing an intention to change the natural order of proofs as it exists almost universally in judicial proceedings. That order requires that one standing in the position of asserting and relying on the existence of a fact must prove the fact. In cases like this, there are strong reasons for adhering to, rather than departing from, that rule. The evidence as to the fact of incorporation, if there be any, is more peculiarly within the power of the petitioner than of those opposing the petition. Cases from New York are cited holding that, under the statute of that state, somewhat similar to section 17, the *onus* of proof as to the fact of incorporation is on the party opposing the application. There is, however, enough difference in the language of the two statutes to deprive those decisions of any weight as authority upon the interpretation of our statute. From the memorandum filed by the court below, we infer that its attention was not particularly called to the absence of evidence of the fact of incorporation. Because there was no such evidence, the order must be reversed, and a rehearing had on the issue of the corporate character of the petitioner as a railroad company, and if, upon such rehearing, the court below find such issue in favor of the petitioner, the order appointing commissioners to stand, otherwise to go for naught; the court below not being required to retry the other issues, but the order appealed from to stand unreversed so far as concerns the court's findings on those issues.