STATE ex rel. RAILROAD & WAREHOUSE COMMISSION v. WILLMAR & SIOUX FALLS RAILWAY COMPANY and Another.[1]

January 30, 1903.

Nos. 13,374—(277).

**Crossing of Railways—Track Connection.**

Laws 1887, c. 10, § 3, as amended by Laws 1895, c. 91, relating to track connections between intersecting railways, construed, and *held* that it requires track connections to be made in all cases of crossing or intersection of any of the traffic lines or tracks of one railway system by those of another at grade, if it be practicable, and necessary for the interest of traffic. Such connection, however, is not required to be made where the crossing is over a private track; that is, one not constructed or used for the purpose of traffic.

**Mandamus.**

The facts found by the trial court justify its order that a peremptory mandamus issue directing the defendants to make track connection between their respective lines of railway at the village of Jasper.

Appeal by defendant Willmar & Sioux Falls Railway Company from an order of the district court for Rock county, P. E. Brown, J., directing the issue of a writ of peremptory mandamus. Affirmed.

*M. D. Grover, W. E. Dodge* and *C. H. Winsor*, for appellant. .

The railway company owed no duty to the general public in relation to the spur track. The track was built for a private purpose only, viz., to transport stone from the quarry. If the company owes a duty to the public, then the public has power to compel the performance of that duty; otherwise it has no power.

[1] Reported in 93 N. W. 112.

Stetler v. Chicago, 49 Wis. 609. The character of a way, whether it is public or private, is determined by the extent of the right to use it. If all the public have the right to use the road then it is a public way. Phillips v. Watson, 63 Iowa, 28. In this case no one had the right to use this spur except the quarry company. It follows that it was not a public way but a private way. Koelle v. Knecht, 99 Ill. 396.

*W. B. Douglas*, Attorney General, and *W. J. Donahower*, Assistant Attorney General, for respondent.

On a trial in the district court the findings of the commissioners are primá facie evidence of all matters and facts contained therein, and this prima facie character can only be overcome by evidence introduced in opposition thereto. Minneapolis & St. L. Ry. Co. v. Railroad & Warehouse Com., 44 Minn. 336; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527; Steenerson v. Great Northern Ry. Co., 69 Minn. 353; Jacobson v. Wisconsin, M. & Pac. R. Co., 71 Minn. 519. The question whether the use is public or private depends upon the right of the public to use the road and to require the corporation as a common carrier to transport freight and passengers over the same, and not on the amount of business. Kettle River R. Co. v. Eastern Railway. Co., 41 Minn. 461; and see Barre v. Montpelier, 61 Vt. 1.

START, C. J.

This is an appeal from the action of the district court of the county of Rock awarding a peremptory writ of mandamus commanding the defendants the Willmar & Sioux Falls Railway Company, hereafter designated as the "Willmar Company," and the Burlington, Cedar Rapids & Northern Railway Company, hereafter designated as the "Burlington Company," to establish and maintain track connections and transfer facilities between their respective railroads at the point where their respective tracks cross each other in the village of Jasper, this state.

On September 23, 1897, the petition of the Jasper Milling Company was presented to the railroad and warehouse commission, hereafter designated as the "commission," asking that the two railway companies be required to connect their tracks at the
88 M.—29

village of Jasper. The respective companies were cited to answer the petition. The Willmar Company alone answered. Its answer was to the effect that the line of the Burlington Company did not cross the main line of the Willmar Company but only a spur track thereof, which was built and operated solely for the accommodation of a quarry company in shipping stone, and under its license, which spur track is a temporary one, and constitutes no part of the main line of the Willmar Company. Neither of the railway companies made any further appearance before the commission, which proceeded on December 9, 1897, to hear the petition. After hearing evidence and personally examining the locus in quo, the commission made its findings of fact and conclusions of law, and ordered that the respective tracks of the railway companies be connected as prayed in the petition. This order was not complied with, and the commission sued out an alternative writ of mandamus to compel them to do so, in which the facts found by it were recited. The Willmar Company answered, and interposed substantially the same answers as it made to the petition, except that it annexed and made a part of its answer a copy of the contract under which its spur track was built. The here material provisions of the contract are to the effect following:

"The said party of the first part, for and in consideration of the sum of one dollar to it in hand paid by the party of the second part,  *  *  *  has licensed, and by these presents does license and permit said railway company, its successors and assigns, to lay down, construct, maintain, and operate a spur track from its main line of railway to the quarries of the said party of the first part, over and upon a strip of land fifty feet wide, being twenty-five feet wide on each side of the center line of said spur track, as now located and established,  *  *  *  together with the necessary turnouts, switches, and sidings, on the said strip of land or adjacent thereto, forever; with the right of said railway company to remove its said track and appurtenances thereto from said land after the said spur shall have ceased to be used for the purpose of transporting stone from said quarries. And in the event of the said spur track being removed, then said strip of land shall revert to said first party, and all rights of said railway company under this license or permit shall cease and terminate."

Upon the trial of the action in the district court the state introduced the proceedings had before the commission, including its

findings and order in the premises, and rested. The Burlington Company made no appearance, but the Willmar Company gave in evidence the contract as to the right of way for the spur track, the substance of which we have set forth, and other evidence tending to show the location of the spur track with reference to its main track, and that of the Burlington Company, and that the only industries located along the spur track were a flouring mill and the stone quarries. The trial court found all the facts recited in the writ, except that it found that the spur track to be thirty-five hundred feet long, instead of three thousand feet, were true, and adopted them as its findings of fact; and, further, that all of the tracks of the two companies were standard gauge, and that the contract received in evidence was duly entered into by the parties thereto. The court, as a conclusion of law, directed the peremptory writ to issue. The Willmar Company alone appealed.

The commission and court found, with other facts, substantially these facts: The main line of the Willmar Company passes through the village of Jasper, at which point it has and maintains a station and suitable depot and switching yards. At or near the south end of the switching yards it has a spur track, extending from the main track, and connected therewith by a suitable switch, easterly thirty-five hundred feet, which spur track is situated near the southern boundary of the village, and terminates at a stone quarry. The mill of the Jasper Milling Company is adjacent to this spur track, and on the south side thereof, and about fifteen hundred feet east from the main track of the railway company. This mill has a capacity of seventy-five barrels of flour per day, and its storage capacity is ten thousand bushels of wheat. The Burlington Company has and operates a branch line, which terminates at Jasper, at which point it maintains a station and suitable yards for switching purposes. This line crosses the spur track of the Willmar Company at a point between the mill of the Jasper Milling Company and the stone quarry. No facilities whatever have hitherto been provided by either company at or near the village of Jasper for the transfer of cars from the lines of the one to those of the other, although their tracks cross each other

at grade, and it is practicable and feasible to make track connections at the point of intersection.

The spur track of the Willmar Company is not a part of its main track, and does not constitute part of its main line thereof, except it is used in connection therewith for transporting stone from a quarry, and the products of the mill and grain therefrom, and for the live stock from a stockyard which is situated on the spur track between the mill and the main track. There are four firms engaged in quarrying, shipping, and selling stone from the stone quarries situate at and in the vicinity of Jasper. From one of the quarries, under existing conditions, shipments may be made over the lines of either road. The other quarries are located on the lines of the Burlington Company alone. The stone quarried in the vicinity of Jasper is a fine quality of building stone, and of divers colors, and the quantity suitable for quarrying is practically unlimited. The owners of the quarries now operated seek markets for their products in all directions from Jasper, and the volume of their business has increased as facilities for the shipment thereof are provided, and track connections and facilities for the transfer of cars between the railroads of the respondents would greatly extend the facilities for reaching present markets and opening up new ones, especially for those quarries which are located on the line of the Burlington Company. The fuel used in Jasper and vicinity is almost exclusively coal, which is shipped chiefly from the ports at the head of the lakes and from the coal fields of Iowa. Under existing conditions, the dealers and consumers of coal located on the line of the Willmar Company are excluded from the Iowa fields, and those located on the Burlington Company are excluded from obtaining coal from the ports of Lake Superior. A suitable track connection between the two railroads at Jasper would be of general public benefit, and in the interests of traffic and of the public using and employing the respective lines of the two railroads.

The facts found by the court are sustained by the evidence. This proposition is not challenged by any assignment of error, and the question here to be determined is whether such facts sustain the court's conclusion of law that a peremptory writ issue. It is

the contention of appellant that the spur track in question is a private track, temporarily built for the purpose only of hauling stone for one company. Hence it is not within the letter or spirit of the statute, which provides for track connection with the main lines of railway for the general carriage of passengers and freight. The here material provisions of the statute (Laws 1887, c. 10, § 3, as amended Laws 1895, c. 91) are these:

"That all common carriers subject to the provisions of this act shall provide at all points of connection, crossing or intersection at grade where it is practicable and necessary for the interest of traffic, ample facilities by track connections for transferring any cars used in the regular business of their respective lines of road from their lines or tracks to those of any other common carrier whose lines or track may connect with, cross or intersect their own, and shall provide equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivering of passengers, property and cars to and from their several lines and those of other common carriers connecting therewith, and shall not discriminate in their rates or charges between such connecting lines or on freight coming over such lines; but this shall not be construed as requiring any common carrier to furnish for another common carrier its tracks, equipment or terminal facilities without reasonable compensation."

This is clear and comprehensive language, and its meaning is obvious. It requires that track connections be made in all cases of the crossing or intersection of any of the traffic lines or tracks of any one railway system by those of another at grade, if it be practicable, and necessary for the interest of traffic. Such connection, however, is not required to be made where the crossing is over a private track; that is, one not constructed or used for the purpose of traffic,—for example, a spur or other track constructed and used only by a railway company for the purpose of reaching its gravel pit, or its shops, or its round house, or for other similar purposes. Do the facts found by the trial court show that the spur track in question is a private one within the meaning of this rule?

The fact that the appellant acquired its right of way for this track by contract defining its rights, or that the purpose of constructing the track was to afford shipping facilities to a single

industry, is not the test whether or not it is a private track. The test is whether its use is a public one. The appellant acquired by the contract the right to construct, maintain, and operate forever the spur track over the designated right of way from its main line of railway to the terminus of the spur, the quarries of the licensor, together with the necessary turnouts, switches, and sidings, with the further right as against the licensor to remove them after the spur ceased to be used for the purpose of transporting stone from the quarries, and, if so removed, the land to revert to the licensor. It appears from these provisions that the appellant is not bound in any contingency to remove the spur track, but may operate it forever for railroad purposes, substantially as if it had acquired the right of way by condemnation proceedings. The evidence in this case clearly shows that it has connected this spur track with, and made it a part of, its railway system, and devoted it to the purposes of traffic; that is, to a public use. Such being the case, it is not a private track, and the appellant is subject to the same obligations and public control as to it as to its main line. Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75; Barre v. Montpelier, 61 Vt. 1, 17 Atl. 923. We therefore hold that the facts found by the trial court sustain its conclusion of law and order.

Order affirmed.