# STATE v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

June 23, 1911.

Nos. 16,886—(3).

**Side track to an industry.**

The appellant was by the order of the railroad and warehouse commission, pursuant to sections 1983 and 2006, R. L. 1905, directed to construct a side track from its main line to a stone quarry and crushing plant near Mendota. This is an appeal from a judgment of the district court affirming the order. *Held,* the statute does not require railroads to construct and operate side tracks to industries, where the conditions are such that so to do would necessarily affect in an unreasonable degree the safe operation of trains on the main line.

**Deprivation of property _ due process of law.**

The order of the commission did not place upon the appellant a burden so unreasonable as to deprive it of its property without due process of law, in violation of either the state or Federal constitution.

**Taking land for a public use.**

The taking of land upon which to lay the side track would be for a public use.

**Finding — evidence.**

The evidence sustains the finding that the operation of the side track and switch connecting it with the main line would not in any unreasonable degree affect the operation or safety of trains on the main line.

Appeal from a judgment of the district court for Ramsey county, Olin B. Lewis, J., affirming an order made April 28, 1909, by the railroad and warehouse commission, requiring defendant to construct and operate a spur track connecting, by a switch, with its main line of railway and running to the stone quarry of William J. Prendergast. Affirmed.

*F. W. Root,* for appellant.

*George T. Simpson,* Attorney General, and *Lyndon A. Smith,* Assistant Attorney General, for the State.

[1]Reported 131 N. W. 859.

STArt, C. J.

On February 10, 1908, William J. Prendergast filed with the railroad and warehouse commission his petition, the here material allegations of which were these: That he was the owner of, a stone quarry in the town of Mendota on his land situated between the right of way of the Omaha Railway Company and the right of way of the appellant, the Milwaukee Railway Company, which adjoins his land on the easterly side; that he was operating a quarry and rock-crushing plant on his land, and handling and selling the product in carload lots; that he had requested the appellant to construct and operate a side track connecting his quarry and plant with its railroad; that it refused to do so, or to make any attempt to agree with the petitioner as to any terms for making the connection. Upon the hearing of the petition by the commission the appellant conceded that the petitioner owned and operated the quarry and plant; that they were situated on his land, across which ran a highway, lying between the right of way of the two railroads; that the petitioner was and is entitled to a side track, and that the railway company desired it as much as he for a business consideration; and, further, that in regard to the commercial side of the proposition the company would concede anything that was claimed, but that it refused to build the side track and switch, because it deemed that they would unreasonably increase the danger in operating its trains in and out of Mendota at the point where the side track would connect with its main line.

The commission found as a fact that it was practicable to put in the side track and connection as prayed for by the petitioner, and that the same could be put in without in any unreasonable degree affecting the operation or the safety of trains on the main line. The commission made its order directing that the appellant construct and operate the side track upon the condition that the petitioner should do the necessary grading from the point where the side track would leave the appellant's main line and do all the necessary grading upon his own land. The appellant appealed from this order to the district court of the county of Ramsey. The court, after hearing the parties, made findings of fact to the effect that the allegations of the petition were true and that the findings of the commission were

sustained by the evidence. As a conclusion of law from the facts found, judgment affirming the order of the commission was directed. Judgment was so entered, from which the appellant appealed to this court.

1. The first contention of appellant is to the effect that the order of the commission makes an inequitable apportionment of the expense of doing the grading for the spur track, which places upon the appellant a burden so unreasonable as to amount to depriving it of its property without compensation and without due process of law, in violation of the state and Federal constitution.

The order requires the petitioner to do the necessary grading for the side track from the point at which it leaves appellant's main line—that is, as we understand the order, all of the side track outside of appellant's right of way—leaving it to pay all other expense of grading and putting in the side track, the cost of which, exclusive of grading, is $3,450. There is, however, no evidence tending to show the cost of grading, or the relative cost of that to be done by the respective parties. The construction of the track in question was ordered as an exercise of the police power of the state.

The mere fact that compliance with the order will impose a pecuniary burden upon the appellant does not necessarily affect its validity; for the mere fact of pecuniary injury does not warrant the overthrow of legislation of a police character. It would have been competent for the legislature to have placed upon railroad companies the entire cost of putting in side or spur tracks ordered in the exercise of the police power. L'Hote v. New Orleans, 177 U. S. 587, 20 Sup. Ct. 788, 44 L. ed. 899; Jacobson v. Wisconsin, M. & Pac. R. Co., 71 Minn. 519, 74 N. W. 893, 40 L.R.A. 389, 70 Am. St. 358, s. c. 179 U. S. 287, 21 Sup. Ct. 115, 45 L. ed. 194.

The statute (R. L. 1905, § 1983) commits the question of the apportionment of the cost of constructing side tracks connecting railway lines with quarries and other specified industries to the sound discretion of the commission. The record in this case does not show that the discretion was arbitrarily exercised, or that the appellant will not receive adequate compensation for its expenses in constructing the side track, by the revenue that it will receive by reason of

such construction. The evidence sustains the action of the commission in apportioning the cost of the construction. There can, then, be no fair claim made by appellant that the order in this respect, or any other, deprives it of its property without due process of law, in violation of either the state or Federal constitution. The admission of record by the appellant to the effect that the petitioner is entitled to a side track, that it desired the side track for business considerations, and that it would be commercially profitable to it, is a conclusive answer to appellant's claim that the order deprives it of its property without due process of law. This distinguishes this case from the case of Missouri Pacific Ry. Co. v. State of Nebraska, 217 U. S. 196, 30 Sup. Ct. 461, 54 L. ed. 727.

2. The next contention is that the appellant, in order to construct the side track, would be obliged to cross a public highway; but it could not acquire a right to construct and operate the track over the highway by the exercise of the power of eminent domain, because it would not be taking property for a public use. The highway in question is upon the land of the petitioner, and it will only be necessary for the appellant to exercise the right of eminent domain in case it fails to secure an agreement from the proper public authority as to the terms and conditions upon which it may cross the highway. R. L. 1905, § 2916. Assuming, however, that the appellant can only secure the right to lay the track across the highway by exercising the power of eminent domain, and that compliance with the order will result in some expense to it, nevertheless the order is not invalid for this reason. Wisconsin, M. & Pac. R. Co. v. Jacobson, 179 U. S. 287, 302, 21 Sup. Ct. 115, 45 L. ed. 194.

The appellant could not so exercise the power of eminent domain for any use except a public use. Upon a consideration of the whole record, we are of the opinion, and so hold, that the taking of land upon which to lay and operate the side track from appellant's main line to the quarry would be for a public use under the decisions of this court. Kettle River R. Co. v. Eastern Ry. Co. of Minn. 41 Minn. 461, 43 N. W. 469, 6 L.R.A. 111; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75; Stewart v. Great Northern Ry.

Co. 65 Minn. 515, 517, 68 N. W. 208, 33 L. R. A. 427; State v. Willmar & S. F. Ry. Co. 88 Minn. 448, 454, 93 N. W. 112.

3. The last contention of appellant is that the maintenance of the necessary switch at the point where the side track would leave its main line would involve such extraordinary dangers to life, limb, and property that the order of the commission cannot be sustained.

The statute (R. L. 1905, § 2006), provides that railroad companies shall construct, maintain, and operate side tracks connecting their respective roads with any of the industries adjacent thereto enumerated in the statute, of which a quarry is one. This statute must receive a liberal construction, and one which will not render it unconstitutional. It is sufficient for the purposes of this case to say that the statute does not require railroads to construct and operate side tracks to industries when it cannot be done without extraordinary hazards to person and property, or, in other words, when it would necessarily affect in an unreasonable degree the safe operation of trains on the main line.

The commission found as a fact that the side track in question would not so affect the operation of trains on the main line. The trial court also so found in effect, and the question here to be decided is whether such finding is so palpably against the evidence that we must hold as a matter of law that the order for the construction and operation of the side track was unauthorized, because its operation would necessarily affect in an unreasonable degree the safe operation of trains on the main line.

The proposed switch to connect the side track with the main line is to be located a mile from Mendota station and entirely outside the appellant's station grounds. Its track from the station to the point of the switch and for some miles beyond is on an upgrade. The opinion evidence on the part of the appellants was to the effect that the maintenance and operation of the side track and switch would involve extraordinary dangers. It appeared, however, on the cross-examination of some of the appellant's experts, that the most serious objection to the switch was the distance it was to be located from the station, and the fact that it would be outside of station grounds and undesirable, and that it is the policy of railroad managers to eliminate

them; also that the grade was a serious objection to the maintenance of this switch. It was, however, practically conceded that, if the side track is to be put in the proposed location, the switch and its kind would be the best that was practicable. The opinion evidence on the part of the respondent was to the effect that if the proposed switch were installed, and it was properly protected and attended to, the dangers from its operation would not be any greater than from any other switch on the line, provided it had the same protection and care.

The fact that the switch is not within the yard limits and close to the station, and is undesirable, is an important, but not a controlling, factor. Were it otherwise, it would be a serious clog upon the development and utilization of the quarries, mines, and other natural resources of the state. Every switch, however favorably located, involves to some degree an element of danger. The question here is, not whether this particular switch will prove dangerous in some degree, but whether its maintenance will unreasonably affect the safety or operation of trains on appellant's main line.

Upon a consideration of the whole evidence we are of the opinion that the finding of the trial court that such will not be the result is fairly sustained by the evidence.

Judgment affirmed.