# NORTHERN PACIFIC RAILWAY COMPANY v. PIONEER FUEL COMPANY.[1]

## February 4, 1921.

## No. 22,126.

**Eminent domain — sidetrack to grain elevator.**

1. The statute relating to the exercise of the right of eminent domain (sections 5395, 5397, G. S. 1913), and not an order of the Railroad and Warehouse Commission, made pursuant to chapter 287, Laws 1917, imposes the duty and is the source of the right of a railroad company to institute a proceeding to condemn land for sidetracks to grain elevators, and is also the source of the jurisdiction of the court to entertain the proceeding.

**Same — delegation of power.**

2. The power of eminent domain inheres in the state as an attribute of its sovereignty and is vested in the legislature and may be directly exercised or delegated to governmental agencies or administrative bodies.

**Same — easement in side track.**

3. The fact that the owner of a grain elevator has acquired an easement entitling him to special privileges in making use of an existing sidetrack, which is to be extended, does not deprive a railroad company of the right to condemn the land required for such extension.

**Easement for public use.**

4. The finding that the land was to be taken for a public use is sustained by the evidence.

[1]Reported in 181 N. W. 341.

**Attorney's act ratified by railroad company.**

   5. By taking possession of the land and laying the tracks, after executing a bond as provided by section 5407, G. S. 1913, a railroad company ratifies the action of its attorneys who signed and filed the petition for condemnation in its behalf.

Condemnation proceedings to take land of defendant fuel company. From the commissioners' award of damages at $3,244, defendant appealed to the district court for Hennepin county, where the appeal was heard by Leary, J., who made the rulings specified in the second paragraph of the opinion, and a jury which returned a verdict in favor of the Pioneer Fuel Company for $5,500. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Shaw, Safford, Ray & Shaw,* for appellant.

*Charles Donnelly, D. F. Lyons* and *Jamison, Stinchfield & Mackall,* for respondent.

LEES, C.

A condemnation proceeding was instituted by the petition of the Northern Pacific Railway Company to take the land of the defendant, in order to lay certain sidetracks which had been ordered by the State Railroad and Warehouse Commission. The order was made on the application of the G. E. Gee Grain Company, and provided that, if the Gee company should be unable to acquire the land by purchase, it should be the duty of the railway company to acquire it by condemnation, and that, when acquired, the sidetracks should be laid for the service of the Gee company and for all other purposes, except that at all times the Gee elevator should have railway service.

At the hearing of the petition, defendant moved that the proceeding be dismissed on the ground that it was founded on an invalid order of the commission. The motion was denied. Defendant then asked that the railway company be required to elect whether it would proceed on the basis of the commission's order or under its power of eminent domain as a railroad company. The court denied the request, took the evidence offered by the parties, respectively, and made an order determining that the public interest required the land to be taken for railroad right of way purposes. Commissioners were appointed and made an award of dam-

ages. Defendant appealed from the award and the jury allowed increased damages. Judgment was entered on the verdict and defendant appealed.

In support of its appeal defendant urges: (1) That the proceeding was in fact brought under the authority of and for the purpose of enforcing the order of the commission; (2) that the order was in excess of the powers of the commission; (3) that the property is sought to be taken for a private and not for a public use; (4) that the governing body of the railway company did not authorize the proceeding.

1. The commission acted under section 4284, G. S. 1913, as amended by chapter 287, p. 422, Laws 1917. The statute requires railroad companies to construct, maintain and operate, at their own expense, proper sidetracks connecting grain warehouses with the main line, so as to afford reasonable facilities for the shipment of grain. The duty arises when the owner of a warehouse makes a written demand for such sidetracks and the warehouse has a capacity of 5,000 bushels, is adjacent to the railroad right of way, and is at or near a regular station. The commission is invested with power to require railroad companies to construct such sidetracks and furnish such connections on such terms as it may fix. If additional right of way is necessary, the cost of procuring it must be paid by the owner of the warehouse. If the landowner refused to sell, as was the case here, a warehouseman could not get connections with a railroad, unless the railroad company exercised its power of eminent domain. Irrespective of the order of the commission, in instituting the proceeding the railway company was only doing what it was bound to do if it obeyed the mandate of the statute. In other words, it owed a statutory duty to the Gee company to furnish proper and reasonable facilities for the shipment of grain to and from its elevator. The commission had found that, in order to perform this duty, it was necessary to construct additional sidetracks and had directed the railway company to construct them. True, the order directed the railway company to acquire the right of way by a condemnation proceeding, if the Gee company was unable to acquire it by purchase, and provided that the Gee company should pay for the land taken. In substance, these directions amounted merely to a restatement of the duties of the two companies under the statute to which we have referred.

Upon the facts as here presented, we hold that the statute, and not the order of the commission, was the basis of the proceeding.

2. If it be conceded that the Railroad and Warehouse Commission has no power to direct or compel a railroad company to institute a condemnation proceeding, it does not follow that the district court may not act on a petition voluntarily filed as directed by the commission. The statute relating to the exercise of the power of eminent domain (sections 5395, 5397, G. S. 1913), was the source both of the right of the railway company to take the land, and of the jurisdiction of the court to entertain the proceeding to accomplish its taking.

"The power * * * inheres in the state as an attribute of its sovereignty, and is vested in the legislature." State v. Van Reed, 125 Minn. 194, 145 N. W. 967.

"The sovereign power rests in the legislature, and may be directly exercised, or delegated to governmental agencies or administrative bodies, and to public or private corporations." School District No. 40, Rock County v. Bolstad, 121 Minn. 376, 141 N. W. 801.

The legislature has directly delegated the power to railroad companies, irrespective of the prior authorization or direction of the Railroad and Warehouse Commission.

3. The Gee company has always had the use of a sidetrack connecting its elevator with the main railway line. The judgment recites that in 1884 there was a grant of an easement in or over one of defendant's lots. The record does not disclose the nature of the easement, but we infer that it gave the owners of the elevator property the right to use the sidetrack which was laid in part upon the lot referred to. The commission directed the railway company to construct four additional sidetracks. The most northerly one is an extension of the sidetrack which the Gee company always had used. The Gee company had put in a track scale and built a loading shed which was roofed over this track. It may be inferred that, by the terms of its easement, it was permitted to do so. If cars are moved over the extension of this track, they must be run over the scale and through the shed. On the assumption that the Gee company has the right to maintain the scale and shed and to use the original sidetrack as an adjunct to its elevator, defendant contends that the public can only use the northerly track if the Gee company consents, and hence

the land occupied by this track has not been acquired for public use.

We think the contention should not be sustained. It appears that the new tracks have been laid and that the physical situation above described in fact exists. There is nothing, however, to prevent the railway company from changing the situation by putting in a crossover or shifting the location of its switches. It owns the ground and the tracks, and controls the operation of the cars run over the tracks. The Gee company's easement, whatever it may be, cannot prevent the railway company from operating the new tracks for the benefit of the public, though it may possibly require some change in their present construction.

4. Defendant earnestly contends that all the new tracks are intended primarily for the storage of cars for the benefit of the Gee company. It appears that it handles about 40 carloads of grain daily during the busy season and that the additional trackage will accommodate substantially that number of cars. It is urged that defendant's property is taken for a private and not for a public purpose. The trial court found that the public interests require the taking of the land for railroad right of way purposes. The evidence tended to show that additional sidetracks were needed to serve industries located in the immediate vicinity of the Gee elevator, and that cars for such industries, as well as for the elevator, will be moved over the new tracks.

The contention now under consideration has been made in other cases where substantially the same state of facts existed. We do not discuss it, but refer to the decisions which, in our judgment, foreclose defendant from maintaining its position. Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75; Stewart v. Great Northern Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L.R.A. 427; State v. Chicago, M. & St. P. Ry. Co. 115 Minn. 51, 131 N. W. 859; Ochs v. Chicago & N. W. Ry. Co. 135 Minn. 323, 160 N. W. 866, Ann. Cas. 1918E, 337; Range S. L. B. Co. v. Great Northern Ry. Co. 137 Minn. 314, 163 N. W. 656, L.R.A 1918B, 784; Union Line Co. v. Chicago & N. W. Ry. Co. 233 U. S. 211, 34 Sup. Ct. 522, 58 L. ed. 924; Chicago & N. W. Ry. Co. v. Ochs, 249 U. S. 416, 39 Sup. Ct. 343, 63 L. ed. 679.

5. The railway company has given the bond required by section 5407, G. S. 1913, in order to take possession of the land. Defendant, notwithstanding, contends that because the company failed to show affirmatively

that its board of directors authorized the institution of the proceeding, the judgment must be reversed. Section 5397, G. S. 1913, provides that, except where the property is required by the state, the proceeding shall be taken by a corporation in its corporate or official name and by the governing body thereof. The petition was signed in behalf of the railway company by the attorneys who represented it at the hearing. Defendant did not then question their authority. If the commencement of the proceeding was in fact unauthorized, the acts of the attorneys might be ratified. Otter Tail Power Co. v. Brastad, 128 Minn. 415, 151 N. W. 198. We find evidence of such ratification. Possession of the land acquired as the result of the proceeding was taken after the bond was filed and the tracks were laid on the land so acquired.

We find no error of which defendant may justly complain, and therefore the judgment is affirmed.