# CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY v. CHICAGO GREAT WESTERN RAILWAY COMPANY.

130 N. W. (2d) 56.

July 17, 1964—No. 39,010.

*Rider, Bennett, Egan & Johnson,* for appellant.
*Harry S. Stearns, Jr.,* for respondent.

THOMAS GALLAGHER, JUSTICE.

The Chicago, Milwaukee, St. Paul and Pacific Railroad Company, hereafter referred to as the Milwaukee, appeals from an order of the District Court of Ramsey County, affirming an order of the Railroad and Warehouse Commission, which granted the Chicago Great Western Railway Company, hereafter referred to as the Great Western, the right to use certain side trackage and certain spur trackage of the Milwaukee at Cannon Falls. The order of the commission dated April 24, 1961, affirmed by the district court, was based upon a petition of the Great Western and provides as follows:

"That the Great Western and the Milwaukee shall have the joint use of that certain side track and spur track serving the Minnesota Malting Company at Cannon Falls, Minnesota, * * * shown in yellow on Respondent's Exhibit No. 3 * * *.

"* * * That the Great Western shall have operating rights over Milwaukee tracks in the vicinity of said spur tracks, to be worked out between the railroads by agreement, and for the division of costs, if any, heretofor incurred by the Milwaukee, by the Great Western, and on such terms as said railway companies may agree.

"* * * That the Great Western will have transit or running rights which will provide for sufficient tail room on Milwaukee interchange tracks * * * for its operations in the use of said side track or spur track."

By stipulation the sole issue determined by the district court was whether the above order is "unlawful for lack of jurisdiction." The facts as stipulated by the parties are as follows: On August 25, 1937, the Milwaukee and the Great Western were authorized by the United States Interstate Commerce Commission to give effect to an agreement between them dated April 8, 1937, under which they agreed to own and operate jointly the Great Western tracks and to abandon the Milwaukee tracks between Red Wing and Cannon Falls, each to continue to serve its respective customers in Cannon Falls, but providing that:

"The Milwaukee Company shall not have the right to serve industries which are now served exclusively by the Great Western Company at Red Wing, Cannon Falls and Welch."

Prior to August 25, 1937, Minnesota Malting Company, a firm located at Cannon Falls, was served exclusively by the Great Western from a side track on the southerly side of its plant. This continued until about 1960, when the malting company requested the Milwaukee to construct a side track on the northerly side of the plant to assist in the handling of its increased business. This the Milwaukee refused to do because of provisions in the contract of April 8, 1937, which prohibited it from serving any industry in Cannon Falls then served exclusively by the Great Western. The malting company thereupon petitioned the commission for an order directing the Milwaukee to construct such trackage. On November 8, 1960, after a hearing before the commission the latter determined that it was in the public interest that the Milwaukee do so and accordingly ordered that the side track be constructed. The Milwaukee complied with this order, the construction costs for the side track being paid for jointly by it and the malting company.

Thereafter at times, because of floods affecting the Milwaukee, the railroad service available to the malting company under this arrangement with the two carriers became inadequate for its requirements. The Great Western thereupon instituted the present proceedings before the commission resulting in the order of April 24, 1961, authorizing it to jointly use the Milwaukee's side tracks to the industry. At the hearing

the Milwaukee's motion for dismissal on the ground that the commission lacked jurisdiction therein was denied. The appeals followed.

■ Under Minn. St. 218.041, subd. 1,[1] and § 218.041, subd. 2(3 and 5),[2] the Railroad and Warehouse Commission has power:

To make appropriate orders relating to continuation, modification, or extension of services and facilities to properly promote the security and convenience of the public;

To prescribe ample facilities by track connection or *joint use of tracks* over which general merchandise is handled or forwarded *for the handling or transfer of such merchandise between railroads and warehouses where two railroads are not more than ½ mile apart;*

*To direct construction, maintenance, and operation* at any points prescribed by law *of all side tracks connecting any road with any manufactory adjacent thereto and prescribe the terms therefor.*

Thus § 218.041 would seem to prescribe ample authority for the commission's order from which the present appeal is taken. This order

---

[1]Minn. St. 218.041, subd. 1, provides: "With respect to all common carriers under this chapter, the commission shall investigate * * * the adequacy of the services they are affording the public; * * * and make all appropriate orders relating to continuation, termination, modification or extension of services and facilities with a view to properly promoting the security and convenience of the public."

[2]§ 218.041, subd. 2, provides in part: "The Commission shall, upon petition and appropriate proceedings thereunder:

\* \* \* \* \*

"(3) At all points of intersection and crossings of different railroads, or where two railroads are not more than one-half (½) mile apart, and at all terminals, prescribe ample facilities by track connection, joint use of tracks, passenger and freight platforms and depots, warehouses, docks over which general merchandise is handled and forwarded, and other necessary appliances and conveniences for the transfer, forwarding and handling of general merchandise and parcel freight between such railroads and between such railroads and such docks, warehouses and vessels at such docks.

\* \* \* \* \*

"(5) Direct construction, maintenance and operation at any points prescribed by law of all side tracks * * * connecting any road with any * * * manufactory adjacent thereto, and prescribe the terms therefor."

definitely relates to an "extension of services and facilities" to promote "the security and convenience of the public" in so far as the latter might require the products of the malting company. It prescribes facilities—by joint use of a side track over which the general merchandise of the malting company is handled—for the "handling" of such merchandise by the two carriers (which are less than 1/2 mile apart). It makes provisions for apportioning the construction and maintenance costs of such track as determined by agreement between the two carriers. At most it is but an extension of the order of November 8, 1960, under which the Milwaukee was ordered to construct the side track notwithstanding that it had agreed with the Great Western that the latter only would serve the malting company. The commission's authority to make this prior order was at no time challenged by the Milwaukee and appears to have ample support in the decisions of this court. State v. Chicago, M. & St. P. Ry. Co. 115 Minn. 51, 131 N. W. 859; Ochs v. Chicago & Northwestern Ry. Co. 135 Minn. 323, 160 N. W. 866, affirmed, 249 U. S. 416, 39 S. Ct. 343, 63 L. ed. 679; Range S.-L. Brick Co. v. G. N. Ry. Co. 137 Minn. 314, 163 N. W. 656, L. R. A. 1918B, 784.

The Milwaukee contends, however, that, if this authority falls within the powers delegated to the commission under § 218.041, that statute is unconstitutional in so far as it may require one railroad to permit another to use its property without its consent and without compensation. With this we do not agree. Railroads by virtue of their franchises, as well as their statutory grants of powers of eminent domain, are quasi-public corporations which have been accorded rights and privileges such as those described in consideration of their rendition of transportation services in the best interests of the public. Farwell F. W. Assn. v. Minneapolis, St. P. & S. S. M. Ry. Co. 55 Minn. 8, 56 N. W. 248. As stated in Chicago G. W. Ry. Co. v. Jesse, 249 Minn. 324, 328, 82 N. W. (2d) 227, 231:

"* * * A common carrier serves both the public and itself. It has its public and its private functions. The public part is the exercise of its franchises for the accommodation of public travel, and whatever is necessary to the exercise of the franchise is for the benefit of the public."

Here the commission's order did not direct taking of the side track in its entirety without compensation in violation of constitutional guarantees. It did not deprive the Milwaukee of the use of such track but merely directed a joint user thereof with the Great Western. In Minnesota Power & Light Co. v. State, 177 Minn. 343, 349, 225 N. W. 164, 166, this court expressed the applicable rule as follows:

"The rule against taking property by right of eminent domain, without special authority, where such property is already devoted to a public use, is generally held not to apply where the second use does not materially or seriously interfere with the first use, or where the second use is not inconsistent and the two uses may be enjoyed together without serious injury to or interference with the first use."

■ Here it should be noted that construction costs of the side track have been paid for in part by the malting company which now finds need for additional services over it and that the order makes provision for the division of any costs heretofore incurred by the Milwaukee on such terms as these carriers may agree. Presumably future maintenance costs would likewise be a matter of division between the carriers under the order. Accordingly, the order cannot be construed as directing the taking of property without compensation and therefore invalid under decisions of this court in Minneapolis Western Ry. Co. v. Minneapolis & St. L. Ry. Co. 61 Minn. 502, 63 N. W. 1035, and State v. Chicago, M. & St. P. Ry. Co. 36 Minn. 402, 31 N. W. 365. As indicated above, this court has upheld the validity of orders similar to that involved here on a number of occasions. See, State v. Chicago, M. & St. P. Ry. Co. *supra*; Ochs v. Chicago & Northwestern Ry. Co. *supra*; Range S.-L. Brick Co. v. G. N. Ry. Co. *supra*.

■ Nor would the fact that the carriers had agreed that the Milwaukee should not serve the malting company circumvent the commission from making the order authorizing it to do so where public interest so required. When the commission first granted the Milwaukee the right to serve the malting company, it did so in abrogation of the contract of April 8, 1937,—an abrogation which has not been challenged at any time. In 44 Am. Jur., Railroads, § 19, the governing principles with respect to such contracts are set forth as follows:

"Any contract by which a railroad disables itself to perform its duties to the public, or attempts to absolve itself therefrom without the consent of the state, is a violation of its charter from the state, forbidden by public policy, and void, and the power of the law may be invoked in many cases to defeat contracts or acts of a railroad company which tend to make it less competent, in its proper capacity, to serve the public."

Authorities cited in support of this statement include Eckington & S. H. R. Co. v. McDevitt, 191 U. S. 103, 24 S. Ct. 36, 48 L. ed. 112; Union Pac. R. Co. v. Chicago, R. I. & P. R. Co. 163 U. S. 564, 16 S. Ct. 1173, 41 L. ed. 265; and Woodstock Iron Co. v. Richmond & D. Extension Co. 129 U. S. 643, 9 S. Ct. 402, 32 L. ed. 819.

Under such principles it would follow that § 218.041, subd. 1, did not constitute an unconstitutional delegation of authority to the commission; and that the orders of April 24, 1961, and November 8, 1960, issued thereunder were not in contravention of the Milwaukee's constitutional rights of due process.

■ Here the Milwaukee concedes that the challenged order relates to an industrial side or spur track wholly within this state. That Congress did not withdraw from the states the latter's jurisdiction over such tracts is evidenced by the language of 49 USCA, § 1 (9, 18, and 22),[3]

---

[3] 49 USCA, § 1(9), provides: "* * * Any common carrier subject to the provisions of this chapter, upon application of any * * * shipper tendering interstate traffic for transportation, shall construct, maintain, and operate upon reasonable terms a switch connection with any such lateral, branch line of railroad, or private side track which may be constructed to connect with its railroad, where such connection is reasonably practicable * * *."

§ 1(18) provides: "No carrier by railroad subject to this chapter shall undertake the *extension* of its line of railroad, or the *construction of a new line of railroad,* or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, * * *." (Italics supplied.)

and particularly the latter which provides that the authority of the Interstate Commerce Commission shall not extend to the construction or abandonment of spur, industrial, or side tracks located wholly within one state. Chicago G. W. Ry. Co. v. Jesse, 249 Minn. 324, 82 N. W. (2d) 227; United States v. Idaho, 298 U. S. 105, 56 S. Ct. 690, 80 L. ed. 1070; Western & A. R. Co. v. Georgia Public Serv. Comm. 267 U. S. 493, 45 S. Ct. 409, 69 L. ed. 753. It is clear that there is nothing in § 1(22) to indicate that jurisdiction with respect to the joint use of such industrial, spur, or side tracks within a state was reserved to the Interstate Commerce Commission or that state regulatory bodies were prohibited from acting in this field. It is true that, in restricting the authority of the Interstate Commerce Commission over construction of such tracks, this section does not define a state's authority with respect thereto, or authorize state regulatory bodies to provide for joint user of such tracks, but it seems reasonable to hold that within a state's authority to order construction of such tracks would be implied its power to require joint use thereof if public convenience so required. In City of Yonkers v. United States, 320 U. S. 685, 691, 64 S. Ct. 327, 331, 88 L. ed. 400, 404, the court stated:

"* * * Proper regard for the rightful concern of local interests in the management of local transportation facilities makes desirable the requirement that federal power be exercised only where the statutory authority affirmatively appears."

In Texas & Pac. Ry. Co. v. Gulf, C. & S. F. Ry. Co. 270 U. S. 266, 278, 46 S. Ct. 263, 266, 70 L. ed. 578, 584, the Supreme Court likewise stated:

"* * * Tracks of that character [industrial side tracks within a state] are commonly constructed either to improve the facilities required by shippers already served by the carrier or to supply the facilities to others * * *. The question whether the construction should be

---

§ 1(22) provides: "The authority of the Commission conferred by paragraphs (18) to (21) of this section, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State * * *."

allowed or compelled depends largely upon local conditions which the state regulating body is peculiarly fitted to appreciate."

In this respect we do not believe that because the Federal statutes reserved to the Interstate Commerce Commission jurisdiction over switching connections (49 USCA, § 1[9]; see, Citizens of Pipestone v. Chicago, M. & St. P. Ry. Co. 167 Minn. 174, 208 N. W. 809, 209 N. W. 913); or over the extension or abandonment of rail lines (49 USCA, § 1[18]); or over joint use of railroad terminal facilities (49 USCA, § 3[5]),[4] there can be implied therefrom that "statutory authority affirmatively appears" reserving to the Interstate Commerce Commission sole jurisdiction over questions relating to joint user of industrial, spur, or side tracks wholly within a state. In the absence of such authority it can be reasonably assumed that Congress intended that the state regulatory bodies should have full jurisdiction over questions arising in this area.

Affirmed.

---

[4] 49 USCA, § 3(5), provides: "If the Commission finds it to be in the public interest * * * it shall have power by order to require the use of any such terminal facilities, including main-line track or tracks for a reasonable distance outside of such terminal, of any common carrier by railroad, by another such carrier or other such carriers, on such terms and for such compensation as the carriers affected may agree upon * * *."