CHRISTIAN B. OTTEN v. BIG LAKE ICE COMPANY.[1]

December 4, 1936.

No. 30,948.

[1]Reported in 270 N. W. 133.

*Arthur E. Giddings,* (*Will A. Blanchard* and *George H. Tyler,* of counsel), for appellant.

*Robb & Rich,* for respondent.

*Harry H. Peterson,* Attorney General, *Ordner T. Bundlie,* Deputy Attorney General, and *Louis B. Brechet,* Special Counsel, *amici curiae,* filed a brief in behalf of the State.

DEVANEY, CHIEF JUSTICE.

Action brought to recover damages for personal injuries received by plaintiff when he walked into a culvert along a state trunk highway.

On March 9, 1934, shortly after eight p. m. plaintiff was en route to Clearwater, Minnesota, from Wisconsin. A punctured tire forced him to stop his automobile near Big Lake. In order to secure help he started back toward the village of Big Lake. It was dark, and he had no light. He proceeded along the shoulder of the left side of the highway facing oncoming traffic. At a point a few hundred feet from where the accident occurred there was a row of posts about four or five feet from the edge of the pavement. Because he felt that he was close to the traveled portion of the highway, plaintiff moved out to approximately six feet from the pavement and continued walking parallel to it until he stepped into an excavation which he had not seen.

This excavation formed part of an underpass which had been constructed for the use of the defendant ice company in moving ice from Big Lake on the north side of the highway into its icehouse on the south side of the highway. The excavation was approximately five feet wide, five feet deep, and, in addition to the 30-foot culvert which formed a portion of the highway proper, the open

excavation extended in each direction some distance on both sides of the road. The top of the excavation was level with the shoulders and the embankment on both sides and was open and uncovered. Four posts were located about four and one-half feet from the edge of the pavement on each side. The excavation was unguarded and unlighted.

It appears that prior to 1920 the defendant ice company had been hauling ice over the highway. This operation interfered with the traffic on the highway to such an extent that it was decided to build this underpass. The board of county commissioners of Sherburne county advertised for bids for the construction of a tunnel or viaduct through which the defendant could transport ice under the highway. Defendant ice company was the lowest bidder and built the tunnel pursuant to a standard plan called W55, furnished to the county by the highway department of the state of Minnesota.

The jury returned a verdict for plaintiff in the sum of $2,500. This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Only one question is presented: Was defendant company under a legal duty to take precautionary and protective measures with respect to the ice tunnel and the excavation which formed a part thereof?

We believe that the defendant company was under no such duty.

The highway involved here prior to 1920 was classified as a state aid road and was one of those under the jurisdiction of the state highway department acting through various agencies. The agency that constructed the tunnel for the use of the defendant ice company under this road was the board of commissioners of Sherburne county. It is true that the actual work was done by the defendant company. But the defendant had no right to proceed except under the authority of a contract from the county commissioners pursuant to plans and specifications approved by the state highway department. It proceeded in such manner.

The highway right of way at the point of construction was and is 66 feet wide. The tunnel approved was 30 feet in length and extended six feet on each side beyond the 18-foot wide pavement.

The excavations into one of which the plaintiff fell extended beyond the 30 feet of actual culvert and were constructed according to specifications and were called for by the plan of construction known as W55. Any and all modifications by the defendant company were made only after approval by the county engineer. Neither the contract with the board nor the specifications called for any rails or coverings for the excavation into which plaintiff fell. The work when completed was approved and accepted by the board, and no objections were raised thereto.

It would seem that if at that time precautionary devices or appliances were deemed to be necessary for the safety of the traveling public, it was clearly the duty of the authorities to specify these devices as a necessary part of the culvert or to install them or later to require defendant to install them. Defendant company was under no greater obligation than any other contractor would have been, and therefore had only to comply with the requirements of the contract and the specifications of the plans furnished by the state highway department. The fact that the state may have been authorized to compel the defendant company to construct such device or to pay for construction of same did not impose upon defendant the duty to determine the necessity thereof.

Nor was there any duty upon defendant to construct or maintain such precautionary devices on these excavations after the passage of the general highway act of 1921. This act was passed subsequent to the adoption in 1920 of an amendment of the state constitution creating a Minnesota trunk highway system, Minn. Const. art. 16, § 1, and provided the manner in which the highway system so created should be carried out. One section of the act provides:

"All trunk highways shall be located, constructed, improved and maintained by the state. The state is hereby vested with all rights, title, easements and appurtenances thereto appertaining, held by, or vested in any of the counties or any legal subdivisions thereof, or dedicated to the public use, prior to the time any such road is taken over by the state as a trunk highway." 1 Mason Minn. St. 1927, § 2549.

Other sections create the office of commissioner of highways and designate him as agent of the state of Minnesota to maintain the trunk highway system.

1 Mason Minn. St. 1927, § 2609, provides that the commissioner of highways shall "have power to properly mark or light dangerous places on the public highways, and take such measures as may be necessary to protect travel thereon."

The foregoing provisions, in our opinion, clearly confer upon the commissioner of highways, and on him only, the right and duty to maintain the trunk highway system and to take all precautionary measures with respect thereto. Such devices as signals, rails, coverings, and the like obviously fall within the purview of these provisions. There is sound reason for this. As stated in Automatic S. A. Co. v. Babcock, 166 Minn. 416, 420, 208 N. W. 132, 133:

"The evident purpose was to establish and maintain, as nearly as practicable, a uniform system so as to better acquaint and familiarize the traveling public with the system and thereby render traffic less hazardous. To allow the governing bodies of the many cities and villages through which the lines pass to interfere with the commissioner's duties within their respective municipalities would destroy uniformity and result in constant turmoil."

Clearly, the desired uniformity would and could not be maintained if owners of property abutting highways were allowed each to install or build without official supervision or approval such device for the protection of the public as he thought best suited for the purpose; and we hold that the defendant company as an abutting landowner had no right to construct or maintain such devices except as authorized by the commissioner of highways.

Not having the right to construct or maintain such devices, obviously the defendant had no duty with respect thereto. In each instance the determination of the question whether a precautionary device is necessary and the type best suited for the particular purpose must rest with the commissioner of highways or a duly authorized agent. There is no obligation upon an abutting landowner to make such determination and to initiate proceedings for the con-

struction or maintenance of such devices. Compare Murphy v. G. N. Ry. Co. 189 Minn. 109, 248 N. W. 715.

Plaintiff contends, however, that the fact that the commissioner of highways has exclusive control over the highways is not material in this case for the reason that the accident did not occur in that portion of the highway designed for the use of the traveling public. It is not denied that the public portion of the highway extended at this point at least from the posts placed on one side of the highway to the posts on the other. The posts were located about four or five feet from the edge of the pavement on each side of the highway and were obviously placed for the purpose of guarding the open excavations. It is, however, strenuously contended that the public easement was restricted to the space between the ends of the 30-foot culvert and between the posts, and that the highway commissioner had no authority outside or beyond this limited portion of the highway. We cannot concur.

The culvert itself was part of the highway. The culvert proper extended a foot or so beyond the aforesaid posts. We can see no sound basis for holding that the highway, as far as it concerned the commissioner of highways, ended at the point of the posts or at the end of the culvert proper. If we were to accept plaintiff's argument we would be unable to find any sound reason for holding that the space of the highway ended at one of these two points and not at the other. Certain it is that it cannot end at both points.

We believe that a common-sense construction of the term "highway system" as contained in the general highway act forbids such arbitrary division of the limits of a public highway. It must be remembered that the highway right of way was and is 66 feet wide and that the plans and specifications of this culvert included excavations extending beyond the culvert proper. The culvert itself served a public purpose. It eliminated interference with the traveling public and was very similar to the numerous tunnels which are maintained by the state as "cattle passes" underneath the public highways. The posts that were placed along the edge of the excavations on both sides had been placed there by the highway department. The record indicates that the highway department in

the past had supervised the entire right of way at this point. For these reasons, we are unable to say that the highway commissioner did not have supervision and control over the entire right of way and over the safeguarding of the public from the dangers necessarily incident to the maintenance of the excavations, and included therein at least is the particular point of the highway here in controversy.

We have not failed to note the case of Automatic S. A. Co. v. Babcock, 166 Minn. 416, 208 N. W. 132. We find nothing inconsistent therein. The court there stated that the commissioner of highways had general supervision over the traveled portion of the highway system throughout its entire length. The problem in that case involved only the traveled portion of the highway. The court was not called upon to determine whether or not the commissioner's control extended beyond that, and there is nothing in that decision limiting his control and supervision to the traveled or paved portion of the highway only.

Neither have we overlooked the line of cases cited by plaintiff which hold that under certain circumstances an abutting property owner is under duty to take necessary precautions for the safety of the public and is liable for failure or negligence if injury results. Typical of these cases are the following: Ray v. Jones & Adams Co. 92 Minn. 101, 99 N. W. 782; Landru v. Lund, 38 Minn. 538, 38 N. W. 699; City of Wabasha v. Southworth, 54 Minn. 79, 55 N. W. 818.

We have no quarrel with the rules laid down and the results reached in these decisions. They have no application to the facts of this case. In each of these cases the abutting owner constructed and/or maintained for his own convenience only a trap door or other opening in or on a public way and negligently failed to use reasonable care to see that such use did not endanger the public use of the way. It seems clear that where, for example, an abutting owner is given the license to maintain a coalhole on a public sidewalk for his own convenience, he is liable if he negligently fails to take precautions to see that the cover provided for that purpose is kept over the opening. But no such facts appear in this case. The culvert constructed here was not solely for the convenience of

the defendant company but also patently served the convenience of the traveling public. There was no failure on the part of the defendant to exercise a precaution such as the replacing of a cover on a coalhole, which precautionary duty necessarily is an integral part of a license to maintain and use such convenience and is a part of the very construction thereof. In each of these cases use of the facility is coupled with its maintenance and care. There were no similar circumstances in this case imposing upon defendant a duty to take precautionary measures with regard to the excavations on the highway right of way, and those decisions are not controlling herein.

The order denying to defendant judgment notwithstanding the verdict must be reversed.

So ordered.

