IN RE PETITION FOR CONDEMNATION OF LANDS OWNED
BY GEORGE FUCHS AND OTHERS FOR
HIGHWAY PURPOSES.
J. A. A. BURNQUIST, ATTORNEY GENERAL, v.
EMILIE GLOE COOK.[1]

May 18, 1945.

No. 33,902.

[1]Reported in 19 N. W. (2d) 394.

*John C. Zehnder, Worth K. Rice, O. A. Blanchard,* and *John W. McConneloug,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Arthur Christofferson,* Deputy Attorney General, and *Harold S. Bjornstad* and *Bert Mc-Mullen,* Special Assistant Attorneys General, for the State.

THOMAS GALLAGHER, JUSTICE.

Proceedings by the state to acquire by condemnation, under Minn. St. 1941, § 161.03 (Mason St. 1927, § 2554, as amended), the easement of ingress to and egress from trunk highway No. 36, relating to a parcel of land belonging to appellant, Emilie Gloe Cook, and adjoining the north side of said highway. The proceedings resulted in a judgment for the state authorizing such condemnation. The question of appellant's damages for such taking was submitted to a jury, which returned a verdict that no damages had been sustained by her.

The judgment from which this appeal is taken decreed that the state acquire for public use all of appellant's right of ingress to and egress from said highway, and recover from her the sum of $15.36 costs and disbursements.

Trunk highway No. 36 runs in an easterly and westerly direction. It is intersected by Victoria street, which runs in a northerly and southerly direction. Appellant's land consists of a five-acre tract at the northwest corner of the intersection of these roadways, about one and one-half miles north of the St. Paul city limits. It extends west along the north side of highway No. 36 a distance of 1,320 feet and abuts on the westerly side of Victoria street a distance of 165 feet north of the intersection. It does not form any part of said highway. To the north and west, appellant's land is bounded by privately owned lands.

On the east portion of this land extending back about 300 feet west of Victoria street, appellant has her home, a garage, and certain installations for a trailer camp, including showers, toilets, laundry, and two wells. There are also fruit trees on this portion of the premises. This portion covers about 1.6 acres, leaving 3.4 acres extending some 900 feet to the west thereof. There is no way to reach this westerly portion except from highway No. 36 or

from Victoria street through the part now used by appellant for her home and the trailer camp described. It is undisputed that this portion of the tract is suitable for subdividing, and that if right of access to highway No. 36 is taken as contemplated it will be necessary for appellant, before subdividing, to construct a road from Victoria street on the southerly portion of the entire tract.

Lexington avenue is parallel to Victoria street and one-half mile west thereof. Appellant's land extends west approximately one-half the distance between Victoria street and Lexington avenue. There are no present approaches to highway No. 36 from appellant's land or from the land west of it between Victoria and Lexington, on either side of said highway.

It is the purpose of the state to make highway No. 36 a "free-way" highway and, in this connection, to eliminate all crossway traffic thereon between intersecting highways. Easements of access to land abutting on the south side thereof were extinguished at the time the highway was established in 1937. The highway was created on an entirely new right of way at that time. Land abutting on the north thereof was not acquired or directly involved in the original proceedings, and in consequence the easements of access which were then created and became appurtenant to such land were not involved or extinguished in the original proceedings. The present action relates not only to appellant's easements of access but to such easements of some 33 additional parcels along the north side of the highway, which upon completion will leave highway No. 36 a "free-way" highway.

Prior to the trial, commissioners appointed by the court awarded appellant $300 damages for the extinguishment of her easement of access to said highway. This award was rejected by her as inadequate, and the appeal to district court in consequence resulted. At the commencement of the district court proceedings, appellant moved to dismiss the same on the ground that the state highway commissioner was not authorized, either by statute or otherwise, to acquire by condemnation the easements of ingress and egress here

involved.· This motion was denied. As previously indicated, the jury awarded no damages to appellant.

On appeal, appellant contends (1) that the easements of ingress and egress are not subject to condemnation; (2) that the commissioner of highways under the Minnesota constitution and statutes lacks power to condemn such easements; and (3) that the verdict of no damages is entirely inadequate and contrary to undisputed evidence.

■ This appeal presents questions not previously submitted to this court. The state, interested in building and developing modern highways, with safety a primary consideration in connection therewith, is abreast of other states in the construction of a number of "free-way" highways. Of necessity, such highways must be broad, with divided roadways separating traffic, with underpasses and cloverleaf intersections, and with crossway traffic thereon limited to certain definite points. Of this type of highway in other states, there is the Merritt Parkway in Connecticut, The Pennsylvania Turnpike in Pennsylvania, the Hudson River Parkway in New York, the Davison Avenue Limited and the Willow Run Expressway in Michigan, and the Arroyo Seco Free-Way in California. Trunk highway No. 10 between Anoka and Elk River in this state to some extent is a limited-access highway, abutting owners being permitted access to the same only at clearly defined intervals. Rights to provide separate roadways from subdivisions of such land abutting said highway have been eliminated.

Generally speaking, the power of eminent domain when properly exercised by the state extends to every kind of property within its jurisdiction, including the rights of access to and from a public highway. Minn. St. 1941, § 117.02, subd. 2 (Mason St. 1927, § 6538), defines "taking" as applied to property in the following language:

"The word 'taking' and all words and phrases of like import *include every interference,* under the right of eminent domain, with the ownership, possession, enjoyment, or value of *private property."* (Italics supplied.)

Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor first paid or secured."

Under these provisions, we have held that an "easement" is "property" and may be taken, within the meaning of the constitution, and that a "private right of way" is "land" and that its destruction by the state for public purposes is authorized, provided the owner of the dominant estate to which it is attached is compensated therefor. 2 Dunnell, Dig. & Supp. § 3037; Adams v. C. B. & N. R. Co. 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493, 12 A. S. R. 644; United States v. Welch, 217 U. S. 333, 30 S. Ct. 527, 54 L. ed. 787, 28 L.R.A. (N.S.) 385, 19 Ann. Cas. 680; N. P. Ry. Co. v. Pioneer Fuel Co. 148 Minn. 214, 181 N. W. 341; United States v. Wheeler (8 Cir.) 66 F. (2d) 977; In re Appeal of Sowers, 175 Minn. 168, 220 N. W. 419.

It has further been held that eminent domain permits not only the taking of easements in land, including the right of access, but that, if properly exercised and upon payment of proper compensation, it permits the complete vacation of roads and streets which in many instances deprive the landowner of his easement of access thereto. See, State, by Peterson, v. Severson, 194 Minn. 644, 261 N. W. 469; Underwood v. Town Board of Empire, 217 Minn. 385, 14 N. W. (2d) 459.

The authorities outside of Minnesota seem to have reached similar conclusions. In Liddick v. City of Council Bluffs, 232 Iowa 197, 232, 5 N. W. (2d) 361, 379, which involved the erection of a viaduct on a city street destroying the access of abutting owners thereto, the court stated:

"* * * The abutting owner has a proprietary right, or easement, of access in the street along his property, which is subordinate to the right of the state or of a city or town in and to said street, so that the municipality may destroy the right by vacating the street, or it or the state may substantially impair or interfere with that access or right of access by improving the street for the

better service or safety of the public, but in either event compensation must be made to the abutting property owner for the injury sustained by him."

See, also, King v. Stark County, 66 N. D. 467, 266 N. W. 654; State ex rel. State Highway Comm. v. Hoffmann (Mo. App.) 132 S. W. (2d) 27; Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362, 197 N. E. 313, 100 A. L. R. 487.

While it is true that the creation of a public highway at the same time subordinates the land on which it is established to the easement of access insofar as abutting landowners are concerned, there is nothing in this fact which prevents the sovereign state from later extinguishing such easements in subsequent condemnation proceedings. As stated in 18 Am. Jur., Eminent Domain, § 88:

"It may be stated as a general rule that, except where restricted by statute, a right or interest already owned in property may be increased, *or a burden in respect thereof may be relieved, upon good cause shown, by the exercise of eminent domain; in other words, the mere fact that one already owns some right or interest in property is not a bar to his acquisition, by the exercise of eminent domain, of the fee title to the property,* or of some other increased interest therein." New York & H. R. Co. v. Kip, 46 N. Y. 546, 7 Am. R. 385; Houston North Shore R. Co. v. Tyrrell, 128 Tex. 248, 98 S. W. (2d) 786, 108 A. L. R. 1508. (Italics supplied.)

It is true that devoting a highway to uses destructive of easements to which it is servient, such as access, light, and air, constitutes a taking of property for which compensation must be made. This is expressed in 18 Am. Jur., Eminent Domain, §§ 183 and 185, as follows:

"* * * Clearly, an owner of land abutting on a street cannot constitutionally be deprived of all access to his premises without compensation, either by the vacation of the street or its physical obstruction in front of his premises, or its obstruction at another place so that the portion of the street in front of his premises cannot be reached. Total deprivation of access is equivalent to

a taking, especially when the easement of access to the street is recognized by the substantive law of the state."

"Interference with an abutting owner's easement of access by a bridge or other structure in the street or highway is a damage or injury to property for which he may recover compensation, under constitutional provisions that private property shall not be 'taken or damaged,' * * * for public use, without compensation."

It may be noted that the easement of access sought to be extinguished here lies completely within the definitive limits of the right of way now owned by the state. Appellant's and other abutting owners' easements of access are within the highway limitations, and hence these proceedings are to extinguish rights not in lands outside of said highway, but rather within the limits thereof. In this respect the proceedings are distinct from those which seek to create or extinguish easements *outside of the highway limitations,* such as those involving snow fences, billboards, and the like, and cases which relate to such outside easements, such as Preston v. City of Newton, 213 Mass. 483, 100 N. E. 641, and Doon v. Inhabitants of Natick, 171 Mass. 228, 50 N. E. 616, hence have no application here.

The general rules covering easements of the type here involved, and their extinguishment through condemnation proceedings, are set forth in Restatement, Property, Servitudes, as follows:

"§ 450. An easement is an interest in land in the possession of another which

"(a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists; * * *.

*"Comment:  a.* * * * Its most important characteristic is that its burdens fall upon the possessor of the land with respect to which it constitutes an interest * * *. This characteristic is expressed in the statement that the land in which an easement exists constitutes a servient tenement."

"§ 453. An easement is appurtenant to land when the easement

is created to benefit and does benefit the possessor of the land in his use of the land."

"§ 455. The term 'servient tenement' signifies that the possessor of the land to which it is applied is subject to an easement."

"§ 456. The term 'dominant tenement' denotes that the possessor of the land to which it is applied has, as appurtenant thereto, an easement over other land."

"Chapter 41. EXTINGUISHMENT. An easement may terminate either through the operation of the limitations of its creation or by extinguishment. * * *

"An extinguishment of an easement may be complete or partial."

"§ 497. *Comment:* *a.* * * * To assume the existence of an easement appurtenant to land there must be presupposed two tracts of land in separate ownerships, a dominant and a servient tenement. If the two tracts come into common ownership they cannot continue to be dominant and servient, and the easement appurtenant ceases to exist * * *."

"§ 507. An easement is extinguished by a taking by eminent domain of the servient tenement, or of an interest therein, to the extent to which the taking permits a use inconsistent with the continuance of the use authorized by the easement.

"*Comment:* *a.* Except as its power is qualified by constitutional limitations, the state, as an attribute of its sovereignty has the power to extinguish private property rights. When it extinguishes or authorizes the extinguishment of such rights through the appropriation for a public use of the subject matter * * * the extinguishment occurs through the exercise of a constitutionally limited but not prohibited power, the power of eminent domain. Easements are property rights and when the ownership of them is in private hands they are subject to extinguishment as other property rights are through the exercise of this power.

"*b.* When the subject matter of private property is so taken, * * * the rights cease to exist. The rights themselves are not appropriated; they are merely extinguished by the exercise of a power paramount to them. * * *

"*c.* A taking by eminent domain which has the effect of extinguishing an easement must be a taking of the servient tenement or of some interest therein. The taking may involve the extinguishment of all previously existing rights in that tenement or it may involve the extinguishment of only some of them. A fee may be taken or only an easement. * * * If the condemning authority has already acquired, subject to the easement, the servient tenement, the easement may be separately condemned and extinguished. For there to be an extinguishment it is only necessary that the use permitted under the condemnation shall be inconsistent with the continuance of the use authorized by the easement existing prior to the condemnation."

"§ 508. Upon the extinguishment of an easement by eminent domain, the owner of the easement is entitled to compensation measured by the value of the easement."

Under the authorities cited, the conclusion cannot be escaped that an easement of access to a public highway is a property right, to which said highway is servient, and may be extinguished by the state under eminent domain when the taking is for a public use and when proper compensation is paid to the owners thereof. 25 Am. Jur., Highways, 154; Elliott, Roads and Streets (4 ed.) § 882.

Here, the state seeks to extinguish the easements of access of the abutting owners on the northerly side of trunk highway No. 36, with payment of just compensation therefor, under proper statutory procedure established for such purpose, and we hold that under such circumstances, under its power of eminent domain, the state may extinguish such easements.

■ To determine whether the commissioner of highways, in his capacity as such, may acquire or extinguish easements of access such as are here involved, we must look to the constitution and the statutes, as well as to our previous decisions interpreting them. It is not disputed here that the commissioner proceeded in accordance with the statutory provisions relating to the condemnation

of property for highway purposes. However, it is contended that, while the commissioner has power to acquire *lands* for highways, he does not have the power, as a representative of the state, to extinguish, within the limits of such highways so acquired, the *easements of access* thereto belonging to the owners of the abutting property.

The legislature, by statute, has delegated to the commissioner of highways the power, on behalf of the state, to acquire by purchase, gift, or otherwise, all *necessary right of way* for the laying out and construction of the trunk highway system. Its right so to delegate the state's power of eminent domain has been upheld many times by this court. See, Minnesota C. & P. Co. v. Koochiching Company, 97 Minn. 429, 107 N. W. 405, 5 L.R.A.(N.S.) 638, 7 Ann. Cas. 1182; N. P. Ry. Co. v. City of Duluth, 153 Minn. 122, 189 N. W. 937; N. P. Ry. Co. v. Pioneer Fuel Co. 148 Minn. 214, 181 N. W. 341. The statute specifically delegating such power here is Minn. St. 1941, § 161.03, subd. 1 (Mason St. 1927, § 2554, subd. 1), which provides:

"The commissioner of highways is empowered to carry out the provisions of the Constitution of the State of Minnesota, Article 16, Section 1; and is hereby authorized to acquire by purchase, gift, or condemnation, as provided by statute, *all necessary right of way needed in laying out and constructing the trunk highway system,* and to locate, construct, *reconstruct, improve,* and *maintain* such trunk highway system, * * * and there is hereby appropriated annually from such fund the entire amount thereof *or so much as shall be necessary for the location, construction, reconstruction, improvement, and maintenance of the trunk highway system,* including the cost of acquiring title to any needed right of way, * * *." (Italics supplied.)

We have construed this provision in State, by Hilton, v. Voll, 155 Minn. 72, 74, 192 N. W. 188, 189, as follows:

"* * * From these various provisions the conclusion is unavoidable that the legislature vested in the commissioner of high-

ways the power and authority to designate the particular land needed for the right of way for a trunk highway. * * * In chapter 323, p. 406, Laws 1921, is also discerned an intention to delegate plenary and final power in the commissioner of highways in all that relates to the location, construction, and *maintenance of the trunk highway system in order to obtain the best results.* To achieve this a uniform and carefully worked out plan both for the route and the construction by one authority is needed."

See, also, Automatic Signal Advertising Co. v. Babcock, 166 Minn. 416, 208 N. W. 132; State, by Benson, v. Erickson, 185 Minn. 60, 239 N. W. 908; State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509; State, by Peterson, v. Werder, 200 Minn. 148, 273 N. W. 714; State, by Ervin, v. Appleton, 208 Minn. 436, 294 N. W. 418.

Appellant contends that the foregoing statute must be strictly construed and that our previous interpretations of it do not extend to approval of the commissioner's authority to extinguish easements of access within a public highway created in and established by the commissioner under his statutory authority. It is urged that the delegation of power of eminent domain must at all times be strictly construed and that no power not expressly granted can be implied by the court. Cited in support of such rule are the cases of Minnesota C. & P. Co. v. Koochiching Company, 97 Minn. 429, 107 N. W. 405, 7 Ann. Cas. 1182, 5 L.R.A.(N.S.) 638; M. & St. L. R. Co. v. Nicolin, 76 Minn. 302, 79 N. W. 304. It is to be noted, however, that these cases involve the delegation of the power of eminent domain to private individuals or corporations. The rule of strict construction may be applicable in such cases. Here, however, the commissioner of highways does not act in the nature of a private individual. He represents the state of Minnesota acting in its sovereign capacity. The state, by order of the highway commissioner, appropriates the designated lands through condemnation proceedings. As required by the statute, the proceedings are brought in the name of the state, and the state in its sovereign capacity obtains title to the property involved in the condemnation

proceedings. The statute (Minn. St. 1941, § 117.03 [Mason St. 1927, § 6539]), authorizing such proceedings, provides:

"If such property be required for any authorized purpose of the state, *the proceeding shall be taken in the name of the state by the attorney general upon request of the officer, board, or other body charged by law with the execution of such purpose; * * *.*" (Italics supplied.)

The majority of cases clearly establish that the principle of strict construction has no application insofar as the state or public departments thereof are concerned. As stated in 29 C. J. S., Eminent Domain, § 22:

"* * * but this principle is not applied as strictly to public bodies as it is in construing powers given to private corporations, and the construction should not be so strict as to defeat the evident purpose of the legislation. While the power should not be gathered from doubtful inferences, *it need not be expressly conferred if it appears by clear implication.*" (Italics supplied.)

In United States v. City of Tiffin (6 Cir.) 190 F. 279, 280, 281, the rule is ably expressed as follows:

"The whole contention * * * is that neither an act of Congress nor an act of the Legislature has expressly authorized the condemnation of this plot of ground * * * the right must appear, to seize this particular property, by express provision directed toward the special property, in some pertinent legislation or be the inevitable implication arising from such special legislation. This rule is established and the numerous authorities which support it are collated in a note on page 614 of 15 Cyc. *The attempt to apply the rule, however, in this case ignores the difference in status between the United States in its relation to lands sought to be devoted to public use and the parties attempting to condemn in the cases giving rise to the rule.*

"The United States has paramount authority in the matter of taking any property within its borders for those public uses which

are within the constitutional reservations to the general government. Its rights in this behalf are inherent in its sovereignty, and are prior to constitutions and statutes. The Constitution does not operate to create this right, but only to limit its exercise to certain objects. *The several states for their own administrative purposes within their own borders hold authority of the same generally broad and extraconstitutional nature. The principle of strict construction of either the nature or extent of this right applies to neither sovereignty for the reason that such right is a very part of the sovereignty itself, existing from the beginning.* This does not mean, however, that no power may intervene to prevent arbitrary action, for such power certainly abides with the courts.

\* \* \* \* \*

"An examination of the cases which support the rule [of strict construction] \* \* \* shows that in each in which the right to condemn was denied the attempting condemnor was a municipal or a private public service corporation, which was vanquished by the application in this particular sense of the general principle that the legislative grant to it of a right to condemn must be strictly construed. No authority is shown, either in the briefs or in our own researches, in which the rule is applied against the sovereignty which it was established to protect." (Italics supplied.)

See, also, United States v. Certain Lands, etc. (D. C.) 48 F. Supp. 306; United States v. Sixty Acres of Land (D. C.) 28 F. Supp. 368, 372; C. M. Patten & Co. v. United States (9 Cir.) 61 F. (2d) 970, 972, dismissed as moot, 289 U. S. 705, 53 S. Ct. 687, 77 L. ed. 1462.

As stated in the Voll case, 155 Minn. 72, 192 N. W. 188, the commissioner of highways determines and designates the lands required for right of way. The word "lands" includes or embraces all easements or rights growing out of the same. See, definition of "land" in 24 Wd. & Phr. (Perm. ed.) pp. 142, 143. The highway commissioner is authorized to acquire necessary right of way. The word "necessary" as defined in 28 Wd. & Phr. (Perm. ed.) pp. 170 to 173,

does not mean an absolute or indispensable necessity when used in relation to eminent domain, but only that the taking involved is reasonably necessary to secure the end in view.

It is to be noted that the legislature not only empowered the commissioner of highways to acquire land necessary for the trunk highway, but also to *reconstruct, improve, and maintain* the highway system, and that it appropriated the necessary funds therefor. In this respect the Minnesota statute grants much broader powers to the highway commissioner than do the statutes of most states. We have held that the commissioner's obligation to *improve and maintain* the highways places upon him the responsibility of maintaining and regulating such highways so as to lessen or eliminate traffic hazards. Thus, in Automatic Signal Advertising Co. v. Babcock, 166 Minn. 416, 420, 208 N. W. 132, 133, in discussing the powers of the commissioner of highways and his duties with respect thereto, we stated:

"\* \* \* the phrase 'to improve and maintain such trunk highway,' as used in the statute, was meant and intended to give the same officer or tribunal, having charge of the construction and maintenance, the general supervision, *upkeep and regulation of the traveled portion of the system throughout its entire length.* The evident purpose was to establish and maintain, as nearly as practicable, a uniform system so as to better acquaint and familiarize the traveling public with the system and thereby render traffic less hazardous." (Italics supplied.)

See, also, Otten v. Big Lake Ice Co. 198 Minn. 356, 270 N. W. 133.

It may be noted here that the Minnesota commissioner of highways has at various times in the past acquired easements in lands even *outside* the definitive limits of the highway for the purpose of establishing "sight corners." Such easements are designed to prevent the erection of structures at intersections which might obstruct the view of persons using the highway. They often deprive the abutting owners of their easements of access to said highway, but are necessary for the proper and safe maintenance of the high-

way. There is nothing in § 161.03 (§ 2554) above referred to which expressly authorizes or empowers the commissioner to acquire such easements outside the highway. In one case, however, which involved a "sight corner," this court made reference to the procedure in a manner which clearly indicated its approval thereof. In State, by Peterson, v. Werder, 200 Minn. 148, 273 N. W. 714, the law relative to such procedure was discussed at length. Therein the highway commissioner, subsequent to the completion of the highway, entered into an agreement to purchase a strip of land adjacent thereto for the purpose of a "sight corner." The evidence indicated that the sum agreed upon for such purpose may have been more than the value of the property. Proceedings were commenced to enjoin the commissioner from completing the purchase. This court affirmed the lower court's order granting the injunction, not because the corner acquired was outside the highway limitations, but because the commissioner had not instituted proper statutory proceedings for the purpose of acquiring the same. Therein we stated (200 Minn. 154, 273 N. W. 717):

"Here * * * *the commissioner has not yet, in the manner required of him by statute* for the exercise of his duty in the premises, 'designated' or 'selected' the Appleton lot as a part of the highway *or an appurtenance thereto.*

* * * * *

"What we have said as to the power of the commissioner (which nothing in this decision should be construed as limiting when exercised within the limits of the grant of it) applies to the suggestion, and it is nothing more, that it was desirable in the interest of the safety of traffic to utilize the northeast corner of the Appleton property as a 'sight corner.' *Ordinarily, the acquisition of an easement would answer that purpose. But whether the sight corner be acquired through an easement or the fee, it must be appurtenant to or part of the right of way.*" (Italics supplied.)

The dissent of former Chief Justice Gallagher in that case went further than the majority opinion in upholding the power of the

commissioner to acquire lands and interests therein outside the definitive limits of a highway. In his dissent he stated (200 Minn. 166, 167, 273 N. W. 723):

"That leaves for determination the sole question as to whether without judicial interference the commissioner of highways has the right under existing statutes to acquire by purchase *land outside of the right of way as previously designated by him* in an *order fixing the final and definite location of the highway, there being nothing arbitrary, capricious, or fraudulent in his action in procuring additional property either for (the purpose of widening a highway or for a sight corner. I think he has,* and I cannot read into the statute the construction given it by the majority opinion. \* \* \* *If the construction given in the majority opinion were strictly adhered to the commissioner of highways would have no power to acquire property outside of the original road limits either for the purpose of widening a trunk highway or for the purpose of acquiring sight corners after it was once designated by final order.* \* \* \* I cannot see how the action of the commissioner can be interfered with by the court." (Italics supplied.)

In the instant case, the objective of the highway commissioner is more limited than in the Werder case. Here, he proceeds under constitutional and statutory authority in compliance with the regulations established by the legislature. Here, he does not seek to go outside the definitive limits of the established highway, but rather to extinguish easements servient thereto and within the same. Here, his actions are directly within his grant of power to maintain the highways safely and to regulate the same in the light of traffic hazards. Here, he does not exercise his power in an arbitrary or capricious manner, but according to statutory methods of procedure, and it would appear that he has acted within the expressed and implied authority granted to him by the legislature. (§ 161.03 [§ 2554].)

Courts have often applied the doctrine of liberal construction to achieve and attain the general objectives of the statutory grants

of power involved. Thus, in In re Widening of Fulton Street (City of Grand Rapids v. Barth) 248 Mich. 13, 17, 226 N. W. 690, 691, 64 A. L. R. 1507, the court held that under a grant of power to take land for "street purposes," land might be taken adjacent thereto for parking purposes, holding the "taking of the land for highways is not limited to that necessary for actual travel." In City of Tulsa v. Williams, 100 Okl. 116, 227 P. 876, the court held that the grant of power to acquire land for reservoir purposes included the right to acquire adjacent land for the control of flowage. In Independent School Dist. v. Hewitt, 105 Iowa 663, 75 N. W. 497, the court held that a grant of power to acquire land for schoolhouse purposes was broad enough to include adjacent land to be used for playgrounds, etc. In Rindge Co. v. County of Los Angeles, 262 U. S. 700, 43 S. Ct. 689, 67 L. ed. 1186, the court held that a grant of power to acquire lands for certain purposes authorized the acquisition of lands not needed for present purposes but which might ultimately be required. See, also, State ex rel. School Dist. v. Superior Ct. 69 Wash. 189, 124 P. 484; Rand v. Mississippi State Highway Comm. 191 Miss. 230, 199 So. 374; State ex rel. Olcott v. Hawk, 105 Or. 319, 208 P. 709, 209 P. 607; Dohany v. Rogers, 281 U. S. 362, 50 S. Ct. 299, 74 L. ed. 904, 68 A. L. R. 434.

Several states, through their highway commissioners, have completed "free-way" highways wherein easements of access have been extinguished under delegations of power more limited in many respects than the Minnesota statutory grant of power. In some of such states, special laws subsequently were enacted authorizing extinguishments of easements, but in most of them the highways were completed and access extinguished under general statutory grants of power prior to the enactment of such special legislation.

*In Connecticut,* the Merritt Parkway was created by special laws enacted in 1931, 1933, and 1935. The first bill, No. 314, enacted in 1931, directed the Connecticut highway commissioner to lay out a highway beginning and ending at certain points. Act No. 408, enacted in 1931, created the Merritt Highway Commission. Act No. 379, enacted in 1933, authorized and directed the highway com-

missioner to lay out the trunk-line highway by using existing highways or by acquiring by purchase or condemnation new rights of way. Section 537c, enacted in 1935, authorized the commissioner to complete the construction of the Merritt Parkway as a through-road for noncommercial vehicles and provided a bond issue for the financing thereof. None of said acts specifically empowered the commissioner to extinguish easements of access. Actual construction of the highway commenced in 1934 and was completed in 1940. Easements of access were taken under the general statutory grant of power covered by Connecticut General Statutes, § 1528, long prior to the enactment of the special legislation (G. S. 1939 Supp. Title XI, c. 80, pt. II, §§ 427e, 428e), which authorized the highway commissioner to acquire easements of access and which became effective in 1939.

In Stock v. Cox, 125 Conn. 405, 6 A. (2d) 346, the court recognized the highway commissioner's power to extinguish easements of access under the general statutory grant of power (§ 1528) which authorized the commissioner to "take any land he may find necessary for the layout, alteration, extension, widening, change of grade or improvement of any trunk line highway." The court likewise held that the designation of the Merritt Highway as a "parkway" did not differentiate it from other highways and the laws applicable thereto. The court stated (125 Conn. 411, 6 A. [2d] 350):

"* * * defendant claims that this is a trunk line highway, and that therefore § 1528 under which he proceeded, and the statutes supplementary thereto, are applicable and expressly authorize and provide for the appropriation which was made. * * *

\* \* \* \* \*

"* * * Under the statutes the highway commissioner then had undoubted authority to take the land necessary for the construction of the Merritt Highway as a trunk line highway, proceeding under § 1528. Was he stripped of the power to take the plaintiff's land for this highway by the passage of § 537c in 1935?

\* \* \* \* \*

"* * * That this statute uses the word 'parkway' as descriptive * * * is evidence by its provision for the construction of 'said road as a parkway.' * * *

"* * * there is no inherent repugnancy in meaning between the terms 'parkway' and 'trunk line highway.' A parkway is 'a broad thoroughfare beautified with trees and turf.' * * * Use of the word 'parkway' instead of 'highway' had no such significance as the plaintiff claims. * * *

"* * * 'There is no repugnancy between the statutes; and we think there is no repeal by implication. * * *' This conclusion, which in effect is equivalent to ruling that § 1528 provided for the taking here, is determinative of the principal claims of the plaintiff, including one that this taking violated his constitutional rights.

       \* \* \* \* \*

"* * * the condemnation will prevent his [plaintiff's] right of access to an existing public highway. This destruction of the plaintiff's right of access to his south tract constitutes a taking of it in the constitutional sense. 18 Am. Jur. 789, § 158; United States v. Welch, 217 U. S. 333, 338, 30 Sup. Ct. 527 [54 L. ed. 787, 28 L.R.A.(N.S.) 385, 19 Ann. Cas. 680]; 15 L.R.A.(N.S.) 51, note; 18 Am. Jur. 814, § 183, and 756, § 132. * * * It constitutes * * * a confiscation of the plaintiff's remaining land, for the direct taking of which the commissioner *has assessed no damages*." (Italics supplied.)

*In Michigan,* Davison Avenue Limited and the Willow Run Expressway systems are limited-access highways. They were constructed under the general condemnation act of Michigan available to state agencies and public corporations. (Act 149 of the P. A. of 1911, as amended, Compiled Laws, 1929, § 3763.) This is a general condemnation statute, with no provisions therein relating to the extinguishment of abutters' easements of access. Both the Willow Run Expressway and the Davison highway were completed prior to the enactment of the Michigan limited-access-highway stat-

ute (No. 205, P. A. 1941), which became effective January 10, 1942 (Cumulative Supp. c. 68, § 9.1094[1][4]). Goodfellow Tire Co. v. Commr. of Parks, etc., 163 Mich. 249, 128 N. W. 410, 30 L.R.A.(N.S.) 1074, relates to an attempt to extinguish easements of access belonging to property owners abutting a highway *without payment of compensation therefor.*

*In Pennsylvania,* under special legislation, there was constructed by private interests the Pennsylvania Turnpike. Its construction, maintenance, and operation were to be paid for through the payment of tolls by the users thereof. This is a limited-access highway and will ultimately belong to the state of Pennsylvania when the cost of construction and maintenance have been repaid to the private owners constructing it. Presumably, it will then continue to be a "free-way," to which the right of access has been eliminated insofar as abutting owners are concerned, notwithstanding the fact that it was constructed under special legislation which made no reference whatsoever to the acquisition of easements of access. Nor does the fact that the road is privately constructed or designated as a "turnpike" or "toll" road differentiate it from any other highway. Turnpike toll roads, equally with free roads, are for the public use. Backus v. Lebanon, 11 N. H. 19, 24, 35 Am. D. 466, 469; Petition of Mt. Washington Road Co. 35 N. H. 134.

"A road constructed and supported by a turnpike corporation differs in no essential characteristic from a common highway, * * *. Their origin and objects are identical. * * * Both are called into existence, and supported, to subserve, in exactly the same way, the public necessities and convenience, and both alike are intended to endure * * * so long as that convenience requires or that necessity exists. State v. Maine, 27 Conn. 641, 646, 71 Am. D. 89, 92.

"A road or canal constructed by the public or by a corporation is a public highway, for the public benefit, if the public has a right of passage upon it by paying a reasonable, stipulated, * * * toll.

Bonaparte v. Camden & A. R. Co. Baldw. 205, Fed. Cas. No. 1,617." 22 L.R.A.(N.S.) 101, 102.

While the special law, 36 Purdon's Pa. St. Ann. (Perm. ed.) § 652a, contains no specific authorization to extinguish easements of access, it permits the highway commissioner to acquire easements and other interests in land (as does the Minnesota general statutory grant of power) for the construction and operation of the turnpike. Further, it may be stated that the Pennsylvania court, in Breinig v. Allegheny County, 332 Pa. 474, 2 A. (2d) 842, recognized the right of the state to acquire easements of access under general legislative authority similar to Minnesota's. Therein the Pennsylvania court stated (332 Pa. 480, 2 A. [2d] 847):

"Where land is taken or purchased for highways, the abutting owner retains, * * * the right of access, * * *. This right cannot be taken from him *unless compensation is made therefor under the law. It is a property right, protected by the Constitution.*" (Italics supplied.)

The court there denied the right of a municipality acting under its *police power,* rather than under a delegation of power of eminent domain, to shut off an abutting owner's access to a highway without payment of compensation therefor. In denying such right, the court stated (332 Pa. 481, 484, 2 A. [2d] 847, 849):

"* * * these propositions are clear: * * * a municipality cannot, *without condemnation,* completely shut off an abutting owner's access to his land, * * *.

* * * * *

"* * * the action * * * was unreasonable and oppressive. The circumstances did not require an absolute prohibition of driveways * * *." (Italics supplied.)

*In California,* while special legislation covered construction of the Arroyo Seco Free-Way, prior thereto the California court had recognized the right of the state in proper condemnation proceedings to extinguish easements of access to a public highway. In

People v. Reed, 139 Cal. App. 258, 263, 33 P. (2d) 879, 881, the California court stated:

"* * * The lands so owned by the defendant, but over which the right of way would not run, were not damaged, as we understand the findings, if the new highway did not operate to preclude ingress and egress. The right of ingress to and egress from such land was a property right. * * * *Such right could be taken* but only *in the same manner as the land itself could be taken, that is, in the manner provided in title VII, Part III (sec. 1237), of the Code' of Civil Procedure.*" (Italics supplied.)

See, also, People v. Ricciardi, 23 Cal. (2d) 390, 144 P. (2d) 799.

While it is true that a number of states have passed acts for the public control of highway access, it may be noted that in many of such states the highway commissioner did not possess the broad statutory power granted the highway commissioner under the Minnesota act, not only to acquire the necessary land for highways, but also to operate and maintain the same after their construction, and, if necessary, to reconstruct the same. While special legislation may be helpful, certainly it is not vital or essential to the objective sought here, nor should the fact that some other states have enacted special legislation be urged as authority for holding that special laws are advisable here before the highway commissioner can extinguish easements of access or create limited-access highways under the broad language of the Minnesota statute. The authorities are almost countless which hold that easements of access must not be taken unless compensation is paid and which by implication indicate that such easements may be taken when the owners are compensated therefor. A few authorities have been cited where this right has been properly denied where the state has acted under its police power and attempted to do so without payment of compensation. Not a single authority has been cited which denies the state or its departments, under the power of eminent domain, the right to extinguish such easements upon payment of just compensation. 18 Am. Jur., Eminent Domain, § 183, note 14, § 185, note 3;

Annotation, 45 A. L. R. 537; D. M. Osborne Co. v. Missouri P. Ry. Co. 147 U. S. 248, 13 S. Ct. 299, 37 L. ed. 155, 156.

The bulletin "Public Control of Highway Access and Roadside Development," issued in 1943 by the Public Roads Administration, Federal Works Agency, while taking the position that specific statutory sanction for taking easements of access might be desirable, states:

"The courts have recognized that abutting property owners have certain rights in existing streets and highways, the deprivation of which even for public use must be compensated for under the 'just compensation' clauses of our Federal and State Constitutions. These rights include the right of access, * * *.

"It is well established in common law of this country that right of access cannot be denied or restricted nor an owner deprived of such right except by due process of law and upon the payment of compensation, and then only for a public purpose. * * *

\* \* \* \* \*

"The concept of limited-access highways to facilitate the efficient movement of through traffic is of such recent vintage that the judiciary has not had the opportunity to endorse or reject it. Perhaps a crystallization of public opinion will influence the courts to take a liberal view of the matter.

\* \* \* \* \*

"To the legislatures and the courts and to the public generally it may well be argued, * * * that with respect to through-traffic facilities abutting owners should have no more right of access to highway right-of-way than to railroad right-of-way. Since the public safety, welfare, and convenience are served in both instances, the right of access should be denied in each case."

The same authority indicates that the states of Tennessee, North Carolina, Mississippi, and Alabama are constructing or have constructed "free-way" highways under general legislative grants of authority without specific legislation. It is also understood that Arizona, New Mexico, Oklahoma, and Utah are now actively de-

signing limited-access facilities for postwar construction. None of such states have special legislation covering access acquisition. See, Public Roads Administration, Federal Works Agency, Records.

Under the authorities above referred to and in the light of the language of § 161.03 (§ 2554), it would seem clear that the commissioner of highways here, under the power delegated to him therein, may extinguish within the highway already created the easements of access thereto and to which said highway is now servient, provided proper payment of compensation is made to the owners of such easements.

■ While the authorities referred to establish the commissioner's right to acquire the right of access here involved, none of them indicate that such right may be acquired without just and fair compensation to the party deprived thereof. Instances may arise where the acquisition of such a right might completely eliminate the value of the dominant estate. In such a case, the state would be obligated to pay the full value of the land. In the instant case, however, it is not disputed that the landowner still has access to Victoria street, and, via Victoria street, to highway No. 36. This, however, does not offer a satisfactory solution for access to the rear of the land, which, as heretofore indicated, is valuable for subdividing. Appellant's witnesses without exception indicated a substantial loss in value to the premises for this purpose. The witnesses for respondent, on the other hand, testified that the taking of the ingress and egress here involved did not in any respect lessen the value of the premises. Each of said witnesses, however, on cross-examination admitted that if the right of ingress and egress were taken, the rear 900 feet of the premises would be of little value for subdividing unless access thereto were possible, and that if right of access to highway No. 36 were taken it would be necessary to construct a road over the southerly portion of the premises from Victoria street to reach the west 900 feet thereof. They gave varying estimates of the cost of such a road, ranging from $300 to $1,200.

The jury returned a verdict awarding no damages whatsoever to appellant. It would seem clear from a reference to the foregoing testimony that such a verdict is contrary to the undisputed evidence, and, in consequence, we feel that a new trial must be ordered because of the failure of the jury properly to compensate appellant for the deprivation of her right of access to highway No. 36. Minn. Const. art. 1, § 13, prohibits taking, destroying, or damaging of property without compensation. Where the taking of the right of access incidental to property lessens the value thereof for the purpose for which it is best suited, it can scarcely be disputed that the owner of said property has suffered damages. Under such circumstances, we must hold that the evidence does not sustain the verdict here and that the case must be remanded for a new trial on the issue of damages.

Reversed.

PETERSON, JUSTICE (dissenting).

■ I dissent upon the sole ground that the commissioner of highways is not authorized by law to acquire by condemnation an abutting owner's right of access to an established highway. If the commissioner had such power, I should concur in the views of the majority upon the ground that there has been a serious and flagrant miscarriage of justice here.

■ The commissioner of highways exercises delegated power. State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188. His powers are measured by the statute which confers them. By Minn. Const. art. 16, the power to locate, construct, reconstruct, improve, and maintain trunk highways is vested in the "State of Minnesota," not in the commissioner of highways. The power of eminent domain is an inherent attribute of the sovereignty of the state. This power lies dormant until called into exercise by legislative action. The power of eminent domain can be exercised only as authorized by the legislature. Minnesota C. & P. Co. v. Fall Lake Boom Co. 127 Minn. 23, 148 N. W. 561; State ex rel. Simpson v. Rapp, 39 Minn. 65, 38 N. W. 926. So it is with respect to the state's powers con-

cerning trunk highways. Neither the executive department nor any officer thereof can exercise the power of eminent domain nor any power concerning trunk highways except by legislative authorization, and then only in strict accordance with the terms of the statute by which the power is conferred. State ex rel. State Highway Comm. v. Gordon, 327 Mo. 160, 36 S. W. (2d) 105; State ex rel. Gebelin v. Dept. of Highways, 200 La. 409, 8 So. (2d) 71. As said of the power of the executive department of the federal government in United States v. 458.95 Acres of Land (D. C.) 22 F. Supp. 1017, 1019:

"* * * The power of eminent domain is a sovereign power. It does not follow because the United States may exercise it that an executive officer may do so."

■ At the outset we are confronted with the proposition that there is no statute which in express terms delegates to the commissioner of highways the power here asserted. In order to spell out the alleged power, the majority resorts to argument and inference. The long argument in the majority opinion in support of inferences as to the existence of the power of the commissioner is strong evidence of the fact that it is nonexistent. "When the right to exercise the power can only be made out by argument and inference, it does not exist." 1 Lewis, Eminent Domain (3 ed.) § 371, note 25.

■ The power asserted here by the commissioner is claimed under the provisions of Minn. St. 1941, § 161.03, subd. 1 (Mason St. 1927, § 2554, subd. 1)[2] authorizing him to acquire by *condemnation as provided by statute* all necessary *right of way*. The statute provides what the commissioner may do by delegating to him power to acquire right of way and how he shall do it by delegating to him the power to make the acquisition by condemnation as provided by statute. The question then is: Does a grant in such terms include the power here asserted?

---

[2]Unless otherwise specified, statutory references herein are from Minn. St. 1941, followed by corresponding sections in Mason St. 1927.

The authority of the commissioner is couched in terms previously judicially defined, which not only do not include the power of taking an abutting owner's right of access, but which plainly exclude it. That being true, the language of the statute amounts to a legislative declaration that the commissioner should not have such power.

In ascertaining the meaning of the language of a statute, resort should be had to statutory rules of construction in aid of the process. Among these are the following: (1) Words and phrases should be construed according to their common and approved usage, § 645.08(1), (Mason St. 1944 Supp. § 10933-9[1]); (2) in ascertaining the meaning of words and phrases, the court should consider the former law, if any, including other laws upon the same or similar subjects, the contemporaneous legislative history, and legislative interpretations of the statute, § 645.16(5, 7, 8), (Mason St. 1944 Supp. § 10933-17[5, 7, 8]); and ·(3) when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject *intends* the same meaning to be placed upon such language, § 645.17(4), (Mason St. 1944 Supp. § 10933-18[4]).

In determining the common and approved usage of the words and phrases in question, we should consider their meaning in connection with the subject matter of roads and highways. "There is no rational way of determining the meaning of words and phrases except by inquiring in what sense they are usually employed in the connection in which they are found." 6 Dunnell, Dig. § 8968, citing Morin v. Martz, 13 Minn. 180(191); Brisbin v. Cleary, 26 Minn. 107, 1 N. W. 825. The phrase *right of way* in connection with the subject matter of roads and highways means a strip of ground of a specified width upon which a highway or a roadbed is constructed. N. W. Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 154, 86 N. W. 69, 71, 53 L. R. A. 175; New Mexico v. United States Trust Co. 172 U. S. 171, 19 S. Ct. 128, 43 L. ed. 407.

As said in Town of Randall v. Rovelstad, 105 Wis. 410, 428, 81 N. W. 819, 825:

"* * * A highway, in its ordinary conception, is a strip of land bounded by approximately parallel boundaries for the purpose of direct travel. It does not include the idea of bays or excrescences on either side of it, not within the direct course of travel, and not adapted thereto, * * *."

The rule is well settled that power to acquire right of way does not include that of acquiring easements and other interests outside the limits of the way. Preston v. City of Newton, 213 Mass. 483, 100 N. E. 641; Doon v. Inhabitants of Natick, 171 Mass. 228, 50 N. E. 616; 1 Nichols, Eminent Domain (2 ed.) § 62; Abbot, "Ways and Waters in Massachusetts," 28 Harv. L. Rev. 478, at pp. 479 and 494. The power to acquire an easement outside the right of way as incident to that of acquiring a right of way was denied in the Preston case, where the court said, quoting from the decision in Doon v. Inhabitants of Natick (213 Mass. 486, 100 N. E. 642):

"* * * 'The statutes which authorize the laying out of high-ways and town ways do not recognize the necessity or desirability of taking different kinds of easements for the construction of ordinary ways, but they provide for the location of ways over lands of private owners. A location under these statutes subjects the land to an easement for any kind of use which may be reasonably necessary for the construction and maintenance of the way. The easement created by such a location is the only easement which county commissioners, road commissioners, or other tribunals laying out highways and town ways under general statutes, can create. *They may take land for a way. They cannot take land for any purpose less than for a way, whatever may be the particular kind of use to which they intend to put it.*' " (Italics supplied.)

It may be that the legislature meant by "a court of last resort" *this* court and not the court of last resort of another state; but, that aside, the opinion of the Massachusetts court and the authorities plainly show what is meant by power to acquire a right of way.

When considered in the light of former law upon the subject of highways, other laws upon the same subject matter, and the legislative interpretation of this particular statute, it plainly appears that the phrase *right of way* as used in the statute means a mere strip of land of specified width; that any land or interest therein lying outside the limits of a right of way as thus defined—outside the limits of the strip of land so to speak—is not and could not be part of the right of way itself; and that express and specific statutory authorization is necessary to confer the power to acquire easements and other interests in land outside the right of way as thus defined.

The statutory provisions in question plainly show that they adopted the view of the prior law concerning the nature of a right of way for a highway. The section (§ 161.03, subd. 1 [§ 2554, subd. 1]) defining the powers and duties of the commissioner of highways is part of L. 1921, c. 323, which is commonly known as the "General Highway Act" and is so labeled in Mason St. 1927, c. 13. The 1921 statute covers the entire subject of trunk highways and county and town roads. The same language is used therein interchangeably as applicable to the kinds of roads mentioned. It treats a road right of way as comprising a mere strip of land of specified width extending between certain termini. In the case of county and town roads, it provides that such roads other than cartways shall be at least four rods wide (§ 3). Thus, under the 1921 as under the prior law, a road right of way was treated as a strip of land of specified width. Under the prior law, the proceedings were to acquire a right of way of the kind mentioned for a road. Martinson v. Town of Eagle Creek, 129 Minn. 392, 152 N. W. 761; N. W. Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175; State ex rel. Simpson v. Rapp, 39 Minn. 65, 38 N. W. 926. In § 3, the land occupied by a road is referred to as a *right of way*. Provision is there made for the acquisition of "additional right of way" when necessary for purposes of construction or maintenance. This is the first statutory provision of any kind in this state authorizing the acquisition

for road purposes of land lying outside the limits of a road. It is obvious that the statute means that the right of way of a road is the strip of land of specified width used for road purposes and that additional right of way is land lying outside the limits of the right of way as thus defined.

This conception of *right of way* was carried forward into L. 1923, c. 439, § 1, where a further grant òf power wasl made to county and town boards to acquire *additional right of way* when necessary for "safety of public travel.". It will be noticed that up to this time no grant of power was made to acquire any easement outside of a road right of way for highway purposes. The distinction between a right of way and an easement in lands adjoining it is, as Mr. Justice Hoar pointed out in Simonds v. Walker, 100 Mass. 112, that a right of way brings the entire strip of land under the jurisdiction of the highway authorities for highway purposes and uses, and a mere easement of land outside the limits of the highway does not.

The first authorization of any kind in this state for the acquisition for highway purposes of an easement in lands adjoining a highway is found in L. 1927, c. 227, § 1, where town and county boards are authorized to acquire "easements for the erection of snow fences." In 1929, the power to acquire such easements was conferred upon the commissioner of highways, and it was made mandatory upon him and county and town officials when establishing highways to include "the power [an easement] to erect and maintain temporary snow fences as required upon lands adjoining the highway part of which lands have been taken for road purposes." L. 1929, c. 396, § 1. Of course, there was no necessity for granting to the commissioner of highways the power to acquire right of way for purposes of construction and maintenance and for safety of public travel, because the power to acquire right of way of unrestricted width enabled him to make allowance for such factors. But that was not true of easements lying outside the limits of the right of way. Because the power to acquire right of way did not include that of acquiring easements lying outside the limits thereof, express

and specific authorization was necessary to confer such power, and this was done by the cited provision of the 1929 law. Hence, the conclusion is inescapable that the commissioner of highways, the same as county and town officials, has no power to acquire easements in land adjoining a highway right of way except as expressly and specifically authorized by statute.

In short, it conclusively appears that the legislature used the term *right of way* in the statute as not including easements and interests lying outside the limits thereof; that the power granted in the first instance was to acquire right of way only; and that this power was changed in only one respect, *viz.,* to acquire easements for snow fences. That is the only easement outside the limits of a right of way the commissioner may acquire by condemnation. Thus, the legislature has placed its own interpretation on the language in question to the effect that a grant of power to acquire right of way by condemnation does not authorize the acquisition of easements outside the right of way.

Further confirmation of the fact that the rule is that the power to acquire right of way for roads and streets does not include the power of acquiring easements and property outside their limits is found in the universal practice of providing by charter provision or statute that cities should have the power to obtain such easements. Such provision is commonly made with respect to easements for the purposes of slopes and fills in connection with the improvement of streets and highways. See, Nichols v. City of St. Paul, 44 Minn. 494, 47 N. W. 168.

The case of State, by Peterson, v. Werder, 200 Minn. 148, 154, 273 N. W. 714, 717, does not hold that the commissioner of highways has the power to acquire easements in abutting property for "sight corners." No such question was involved in that case. There, the commissioner was seeking to acquire *by purchase the fee* of abutting property. There was no attempt to acquire merely an easement. The question whether an easement could be acquired by condemnation or otherwise was not raised, litigated, or decided. The real point decided was that no acquisition of land for high-

way purposes could be made unless the commissioner by prior definitive order required by § 161.03, subd. 4 (§ 2554, subd. 4), included in the highway established the land to be acquired. What was said in addition is dicta. It must be confessed that in any view the Werder case is an unsatisfactory one. In many respects it defies analysis. Mr. Chief Justice Gallagher in his dissenting opinion explored and exposed with devastating effect the decision's errors and fallacies. It is not necessary to repeat here what he so well said. But the exigencies of the situation require answer to the *dictum arguendo* in the Werder case (200 Minn. 154, 273 N. W. 717): "Ordinarily, the acquisition of an easement would answer that purpose [for a sight corner]," relied on by the majority as authority for the rule that the commissioner may acquire by condemnation easements outside a road right of way. This dictum is of no binding force. It is not entitled to any weight. First, it is positively erroneous, because, as has been pointed out, the commissioner lacks the power to acquire any easement outside the right of way, except for snow fences, for which there is specific statutory authority, and, because any land or interest therein acquired for highway purposes must be included in the right of way and paid for as such. Preston v. City of Newton, 213 Mass. 483, 100 N. E. 641, and Simonds v. Walker, 100 Mass. 112, *supra*. This applies to "sight corners" as well as to other easements. An examination of the opinion discloses that the dictum is the result of failing to consider and of entirely disregarding the applicable rules of law, statutes, and the rules of construction just mentioned. Only by so doing could the view embodied in the dictum be reached. Secondly, it is an attempt to control the commissioner's action as to the extent of a given acquisition in the teeth of the rule there recognized that decision as to how much or what portion of property is necessary to be taken is exclusively for the commissioner and not for the court. As indicative of the extent to which the Werder decision is permeated with error, attention should be called further to another dictum that trunk highway funds may not be expended constitutionally to beautify highways. At the time the Werder

case was decided, the rule was settled the other way. Perlmutter v. Greene, 259 N. Y. 327, 182 N. E. 5, 81 A. L. R. 1543. See, Mr. Justice Holt's opinion on reargument in State ex rel. Twin City B. & I. Co. v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585; 11 Am. Jur., Constitutional Law, § 280. So far as here pertinent, the Werder case supports the view that, if an acquisition of land is to be made, it must be made as part of the highway. If so, it must be acquired as *right of way* and included therein by a definitive order complying with the requirements of the statute.

Turning from our own to other jurisdictions, we find that the overwhelming consensus of opinion is that the power to acquire right of way does not include that of acquiring the abutting owner's right of access. This is manifested by the fact that in no instance has a taking of the kind here involved been attempted, much less sustained. In at least 17 other states,[3] legislation has been adopted in recent years authorizing the establishment of so-called "freeways," "limited-access highways," and other highways of the same kind, to which the abutting owner's right of access is acquired by the exercise of the power of eminent domain under express and specific statutory authorization. These statutes differ in kind and scope. The Michigan statute[4] provides for the acquisition of any

---

[3] Bulletin, "Public Control of Highway Access and Roadside Development," issued in 1943 by the Public Roads Administration, Federal Works Agency. In Appendix B thereof, the statutes with their citations are printed:

| | | | |
|---|---|---|---|
| California, | pp. 76-77 | Massachusetts, | p. 89 |
| Colorado, | pp. 78-79 | Michigan, | pp. 89-90 |
| Connecticut, | pp. 79-80 | New Hampshire, | pp. 90-91 |
| Florida, | pp. 80-83 | New York, | pp. 91-94 |
| Illinois, | pp. 83-85 | Ohio, | pp. 94-95 |
| Louisiana, | pp. 85-86 | Rhode Island, | p. 95 |
| Maine, | p. 86 | Texas, | pp. 95-96 |
| Maryland, | pp. 87-88 | Virginia, | pp. 96-97 |
| | West Virginia, | pp. 97-98 | |

[4] The Michigan statute provides: "For the purposes of this act, the aforesaid agencies may acquire private property and property rights by purchase, gift, devise, or condemnation, and the provisions of any existing

property or interest therein necessary for the purpose of limited-access highways. The other statutes, except that of New York, provide in express terms for the acquisition of the abutting owners' right of access.[5] The New York highway statute provides for the construction of limited-access highways only "at a place where no public highway theretofore existed." 24 McKinney's Consol. Laws New York, art. III, § 30, and 1944 Cumulative Annual Pocket Part, art. III, § 29, subds. 1, 13, 14, § 30, subds. 1(a), 13, 14; art. XII-A, § 346. The statute applies only to entirely new highways and not to those already in existence. Under the statute, where a new highway is established as a limited-access one, the original taking carries with it upon payment of just compensation therefor the right of access which otherwise would accrue to the abutting owner from a taking for highway purposes.

As a guide to state officials, the bulletin cited promulgates a so-called model limited-access highway act containing express provision for the acquisition of the abutting owner's right of access.[6]

There is no reasonable basis for the view that highway officials in the states having statutory provisions authorizing the taking of an abutting owner's right of access for so-called limited-access highways may exercise the same power without statutory authorization. The plain reason for such statutes is to grant power which otherwise would be lacking. It is preposterous to think that the legislatures of the 17 states mentioned unnecessarily enacted statutes to confer power on officials if they already possessed such

laws of this State shall apply. All property rights acquired under the provisions of this Act shall be in fee simple estate."

[5]The California and Virginia statutes are fair examples. The California statute provides: "No State highway shall be converted into a freeway except with the consent of the owners of abutting lands or the purchase or condemnation of their right of access thereto." The Virginia statute provides: "Sec. 1975 yy.(3) **The State highway commission may designate an existing highway as or included within a limited access highway** and existing easements of access, light or air may be extinguished by purchase, eminent domain, or grant, in accordance with the methods of obtaining rights of way for highway purposes."

[6]Appendix A, *Id.* Bulletin, pp. 73-75.

power without the statutory authorization. The majority opinion fails to cite a single case sustaining a taking of the abutting owner's right of access. The cases cited are distinguishable.

There is no Michigan decision holding that the abutting owners' right of access to Davison Avenue Limited and the Willow Run Expressway was acquired by the state, much less that there was authority for such taking. The case of In re Widening of Fulton Street (City of Grand Rapids v. Barth), 248 Mich. 13, 17, 226 N. W. 690, 691, 64 A. L. R. 1507, did not involve such a taking, but a widening of a street to provide parking space. The land there taken was made part of the street right of way. As the court said: "The land was taken 'for street purposes.'" In Goodfellow Tire Co. v. Commr. of Parks, etc., 163 Mich. 249, 128 N. W. 410, 30 L.R.A.(N.S.) 1074, the court held that the city could not take an abutting owner's right of access under the power to make rules and regulations concerning the use of the boulevard on which the property fronted and that denial of access under the guise of regulation amounted to a taking of such right without compensation. The Michigan statute authorizing the taking of the abutting owners' right of access apparently is designed to cover any case where such an owner claims compensation for such a taking. At least the action, if any, by highway officials involving such takings in particular cases was not deemed by the Michigan legislature to create an authority otherwise lacking.

The Merritt Parkway case, Stock v. Cox, 125 Conn. 405, 6 A. (2d) 346, did not involve a condemnation of an abutting owner's right of access to a *highway*, but his right to damages caused by the construction of a *parkway*, which had a roadway down the middle. Parkways are treated as a special type of thoroughfare, to which the ordinary rules concerning the rights of abutting owners are not applicable. Matter of County of Westchester (H. R. Parkway) 246 N. Y. 314, 158 N. E. 881; Board of Supervisors v. Wilkin, 260 App. Div. 366, 22 N. Y. S. (2d) 465 (motion for leave to appeal to the court of appeals denied, 260 App. Div. 995, 25 N. Y. S. [2d]

788). In the Wilkin case the court said (260 App. Div. 368, 22 N. Y. S. [2d] 466):

"This parkway is a part of the State park system, and while it will have a road for travel running through it, nevertheless it is essentially a park. The rule, laid down in Perlmutter v. Greene (259 N. Y. 327, 182 N. E. 5, 6, 81 A. L. R. 1543), that the 'right to have the highway kept open for * * * access as well as for travel [is] an "easement," ' is not applicable to a parkway of the kind here contemplated."

There is no California case holding that an abutting owner's right of access may be taken without express statutory authorization. The case of People v. Reed, 139 Cal. App. 258, 33 P. (2d) 879, did not involve the acquisition of an abutting owner's right of access. In that case the right of access had been acquired by a default judgment. The court held that it was error for the trial court to include in the judgment rendered what was in legal effect an injunction precluding the owner from ever constructing and putting in place a way of ingress to and egress from the land condemned. In effect, the court held that the abutting owner's right of access survived the default judgment taking it away from him. That case throws no light on the question here involved. In subsequent cases the California courts have held that an abutting owner's right of access cannot be taken from him except by the exercise of the right of eminent domain pursuant to statutory authorization. People v. Ricciardi, 23 Cal. (2d) 390, 144 P. (2d) 799. In 1939, five years after the decision in the Reed case and four years prior to that in the Ricciardi case, the California statute authorizing the acquisition of an abutting owner's right of access was enacted. The plain inference is that the decision in the Reed case was not considered as authority for the rule that the right of access could be taken without express statutory authorization. The 1939 statute was enacted to supply such authorization.

The Pennsylvania *toll* turnpike is no precedent for the power here asserted. A toll turnpike, as the term implies, is one for the

use of which a charge is made. The Pennsylvania statute authorizes such a charge. The effect of such a charge is to exclude the entire public, including abutting owners, from access to the turnpike, except upon payment thereof. See, Cleaveland v. Ware, 98 Mass. 409. That being true, it is obvious that a toll turnpike is entirely different from a trunk highway.

There is no Pennsylvania statute authorizing the acquisition of an abutting owner's right of access to a public highway. Nor is there any decision of the supreme court of that state to that effect. The case of Breinig v. Allegheny County, 332 Pa. 474, 2 A. (2d) 842, does not so hold. On the contrary, it holds that an abutting owner's right of access cannot be taken away by a police regulation entirely preventing him from having access to the highway and that such a regulation is invalid because it is an unauthorized taking of the abutting owner's right of access without just compensation. That is quite a different thing from holding that there could be such a taking without legislative authorization. The case, moreover, definitely is authority against the rule laid down by the majority that the commissioner of highways has the power here claimed as part of his power to regulate the use of trunk highways. See, subdivision 6, *infra*, of this opinion.

There is no justification for saying that our own trunk highway No. 10 between Anoka and Elk River involved a taking of the abutting owners' right of access. On the contrary, it appeared from the oral argument that the abutting owners have full access to that highway, but that such right, as well as the owners' use of it after they get on it, is regulated. The regulation of the right of access is consistent with the denial of the right to take it without specific statutory authorization. See, subdivision 5, *infra*. If anything, the Anoka-Elk River road is a good example of what the commissioner can do without resorting to the extreme power here asserted.

Cases involving the taking of an abutting owner's right of access by vacating a road, as in Underwood v. Town Board of Empire, 217 Minn. 385, 14 N. W. (2d) 459, are not in point, because, unlike the

power asserted here, the statute in such cases expressly provides for the vacation and the payment of the damages occasioned thereby, including those for the taking of abutting owners' rights of access. The difference is this: That in the road-vacation cases there is express statutory authority for the taking, while here there is none at all.

■ The statutory provision that the manner of acquisition shall be "by * * * condemnation, as provided by statute," so far from authorizing the commissioner to acquire by condemnation the abutting owner's right of access, intended that the commissioner's exercise of the power to acquire right of way should simultaneously therewith create the abutter's right of access. The words "as provided by statute" refer to Minn. St. 1941, c. 117 (Mason St. 1927, c. 41), as the statute relating to eminent domain in force at the time of the taking. Minn. St. 1941, § 645.45(5), (Mason St. 1944 Supp. § 10933-46[5]). Long prior to the enactment of the statute defining the powers and duties of the commissioner, the eminent domain statute was judicially construed by us as "a court of last resort" in Adams v. C. B. & N. R. Co. 39 Minn. 286, 292, 39 N. W. 629, 632, 1 L. R. A. 493, 12 A. S. R. 644, where we held that the taking of a right of way for a street simultaneously creates in the abutting owner a right of access thereto in the following language: "The private right is vested by the same proceedings or acts that vest the public right." Under the statutory rule of construction that, when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject *intends* the same meaning to be placed upon such language (§ 645.17[4], [Mason St. 1944 Supp. § 10933-18(4)]), the legislature must be deemed to have intended that a taking under the statute by the commissioner should be attended with the same consequences as a taking by any other condemner under our prior construction of the statute. Consequently, the legislature must have intended that a taking by condemnation of a right of way by the commissioner should at the same time create a right of access thereto in the abutting owner. A power, the exertion of which was intended to

create a right, cannot be used to take it away. That is precisely what is being attempted here. While the commissioner recognizes that the prior establishment of the highway in question created in the abutting owners a right of access thereto, he now claims that he can take that right by an exercise of the very power which was intended to create it and not to take it away.

■ The commissioner's power to make certain regulations concerning the use of trunk highways does not authorize him to take the abutting owner's right of access. Goodfellow Tire Co. v. Commr. of Parks, etc. 163 Mich. 249, 128 N. W. 410, 30 L.R.A. (N.S.) 1074; Brownlow v. O'Donoghue Brothers, 51 App. D. C. 114, 276 F. 636, 22 A. L. R. 939; Anzalone v. Metropolitan Dist. Comm. 257 Mass. 32, 153 N. E. 325, 47 A. L. R. 897; State ex rel. Gebelin v. Dept. of Highways, 200 La. 409, 8 So. (2d) 71. As said in the Anzalone case, holding that the abutter's right of access may be regulated (257 Mass. 37, 153 N. E. 327, 47 A. L. R. 897): "The exercise of a legal right may be regulated *but it is not to be taken away without legislative sanction.*" (Italics supplied.) The legislature has made it clear that right of way may be acquired for safety purposes, but not easements in property lying outside the right of way, by granting the commissioner practically unlimited power to acquire right of way and none to acquire easements, except for snow fences, and by in other sections granting to county and town boards specific power to acquire *additional right of way* for safety purposes, but not easements for such purposes.

■ It seems to me that the fact that the state must compensate the owner of an easement where it is taken can have no application here, because the easement in question has not been and cannot be taken. Authority to take cannot be inferred from a duty to compensate where there is an authorized taking. The cases cited in the majority opinion involve situations where there was no taking of an easement as such, but of the servient land to which the easement was appurtenant. See, Aigler, "Measure of Compensation for Extinguishment of Easement by Condemnation," 1945 Wis. L. Rev. p. 5.

In conclusion, we should remember that the statute conferring the right of eminent domain upon the commissioner of highways was enacted long before limited-access highways were ever thought of. Roads are laid out and constructed primarily for the benefit of adjoining landowners. The great object of the trunk highway system was to make accessible to the people a system of improved. roads. As the proponents of the system said, its purpose was to get the farmers out of the mud. To the extent that the commissioner can exercise the power here asserted, he not only can keep them in the mud, but off the highways altogether. The legislature has made no such wholesale delegation of power as that. It has granted limited and carefully defined powers. It has carefully discriminated between right of way, additional right of way, and easements outside the right of way. Its practice has been to grant power with respect to each in limited and carefully defined fashion. In the general highway act, the commissioner was granted the power to acquire *right of way* only. Counties and towns were granted the power to acquire *right of way* of specified width and "additional right of way" for construction and maintenance. Then, piecemeal, they were granted by subsequent statutes the right to acquire additional right of way for purposes of safety of public travel. Later, both the commissioner and county and town officials were given for the first time the power to acquire an easement of any sort, and that was limited to one for snow fences. The grants were couched in terms previously judicially defined not only as not including the power here asserted, but as positively excluding it. More than that, the legislature contemplated that the exercise of the power granted should simultaneously therewith create in the abutting owner a right of access to any road for which his land might be taken. It was never thought that the power which was intended to create the right should be used to take it away. All this bespeaks to my mind a plain legislative denial of the power here asserted. We cannot hold that the commissioner has such power without to that extent legislating judicially.

This is a case where the legislature, if the power here asserted is to be exercised, should speak in the light of changed conditions. It should determine whether the commissioner shall have the right to take the abutting owners' right of access *at all;* whether, if granted, the power shall be limited to new highways as in New York or shall extend to all highways as in some states; whether the right shall be limited to certain types of roads, and, if so, to which ones; whether there shall be any limitation as to the distances where access may be denied—whether it may be five miles, as was the distance against making U turns in the Jones Beach case, or a greater or shorter distance; and perhaps other matters proper for legislative consideration.

Because the commissioner lacks the power to take the abutting owners' right of access to the road in question, there should be a reversal with directions to dismiss the proceeding as to the appellant.

